# Stanley L. Cohen & Associates, LLC
## ATTORNEYS AT LAW



119 AVENUE D, 5TH FLOOR
NEW YORK, N.Y. 10009   USA

Hon. Lewis A. Kaplan
United States District Judge
Southern District of New York
Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007-1312

**DOCKET**



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/28/13

BY HAND DELIVERY

24 May 2013

Re: <u>United States v. Sulaiman Abu Ghayth</u>,  S13  98 CR 1023 (LAK)

Dear Judge:

Enclosed please find a letter which counsel attempted to file by ECF yesterday evening. The item was rejected by the system today, and in comportment with the instructions of the Court, I am sending it now by messenger to chambers. In re-formatting this letter from electronic PDF for ECF to a paper copy, I have taken the opportunity to correct typographic errors; the content remains the same.

Sincerely Yours,

Stanley L. Cohen, Esq.
Counsel for Sulaiman Abu Ghayth

CC: AUSA Mike Ferrara, AUSA John Cronan
SLC/ps

# Stanley L. Cohen & Associates, LLC
## ATTORNEYS AT LAW

Hon. Lewis A. Kaplan
United States District Judge
Southern District of New York
Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007-1312

119 AVENUE D, 5TH FLOOR
NEW YORK, N.Y. 10009   USA



BY HAND DELIVERY

24 May 2013

### RE: United States v. Sulaiman Abu Ghayth, S13 98 CR 1023 (LAK)

Dear Judge:

As noted in the Government submission earlier today, Ms. Zoe Dolan, Esq., filed a Notice of Appearance on 23 May in the above captioned matter, of counsel to my firm. In that regard, before doing so, she fully executed the applicable SAMs agreement and met with Mr. Abu Ghayth.

Ms. Dolan, who speaks fluent Arabic, has previously received security clearance in another terrorism case, in which she reviewed a significant amount of classified material without incident. In addition, Your Honor has previously appointed her pursuant to CJA on a terrorism case involving the east Africa embassy bombings, without any concern about her ability to obtain security clearance. As indicated in the Government submission, as a result of Ms. Dolan's filing, the concern about security clearance in this matter has now been resolved and no longer poses an impediment, in and of itself, to the entry of my firm as new counsel in this case. Moreover, the Government adheres to its previous position that under the record before the Court Mr. Abu Ghayth has made a knowing and intelligent waiver of any potential conflict[1] which he

---

[1] The Government's Curcio application, together with the expressed concerns of the Court, appear to identify three specific issues which raise the specter of a potential conflict in this case: 1) that counsel might attempt to curry favor with the Government at the expense of the defendant; 2) that because counsel may possess some personal *animus* directed at the Government or the Court, either or both may react adversely against the Defendant; and 3) that the Defendant might lose counsel of choice because it is conceivable that between now and the time of Defendant's trial, counsel may have himself gone to trial on his own indictment, been convicted, and imprisoned. In short order, it is respectfully submitted that each such concern is either belied by the record, or otherwise reduced to an exercise in form over substance. For example, although the charges against the undersigned are approximately one year old, the investigation itself is of much older vintage, preceding the formal charge by at least four years. Throughout this period counsel has represented numerous defendants in the Northern District of New York. At no time has a claim been raised by an accused, the Government or the court that counsel's advocacy was anything short of vigorous and effective. Over this period, there have been held perhaps a dozen or more Curcio hearings, in which all of the defendants elected to remain with counsel of choice. In addition, in proceedings before Your Honor several days ago, counsel noted that during the same period he filed a lawsuit in the SDNY against the US Attorney's Office-NDNY, and approximately one month before counsel's indictment, filed a lengthy and detailed complaint with the Department of Justice's Office of Professional Responsibility, accusing prosecutors in the NDNY of professional

tel: (212) 979-7572          stanleycohenlaw@verizon.net          fax: (212) 995-5574

## STANLEY L. COHEN

might otherwise raise on direct or collateral appeal, with regard to the unique circumstances attendant upon my entry in the case as his attorney of record.

When last before the Court, I attempted to convey to Your Honor various aspects about my own *bona fides*—the consideration of which led the Defendant to conclude that he wishes me to enter the case as lead counsel of choice for him, and to select and assemble a team of other lawyers, of counsel to me, to represent him, notwithstanding the potential Curcio issue before the Court. In that light, Mr. Abu Ghayth has since asked me to convey the following information, which among other things makes his decision to retain me a logical and reasonable one.

As Your Honor may or may not know, I have been involved directly as counsel or co-counsel, or as a consultant and investigator, in perhaps more terrorism cases since 1995 than any other attorney in the United States. This would include work on behalf of persons formally charged, those suspected of terrorism offenses, those identified as material witnesses, Grand Jury contemnors, and those involved, howsoever much, with international terrorism plots throughout the world. I represented, for example, the then-leader of the political wing of Hamas in his successful extradition defense in the SDNY in 1995; I have handled terrorism matters involving various alleged members of Hamas, Hezbollah, al Qaeda, Lashkar-e-Taibi, al Shabaab, and other groups. During the course of such work I have handled matters in New York, New Jersey, Illinois, Texas, Virginia, Oregon, and other venues within the United States. In addition, I have represented accused persons internationally: I served as lead counsel in defense of a terrorism prosecution in Romania involving events in Iraq during the war; I have appeared in numerous other venues on terrorism-related matters, including Morocco, France, and Belgium; I have worked with other lawyers on international proceedings, including matters before the International Criminal Court, the European Court of Human Rights, and other international forums. I am currently involved in civil rights litigation on behalf of the Muslim community in South Africa.

Over the past seventeen years, this work has taken me throughout the world. I have travelled to and worked in the Middle East, the Gulf States, south Asia, North Africa, southern Africa and various parts of Europe. Conservatively speaking, I have travelled to these areas more than three dozen times; over these years I have located and interviewed hundreds of witnesses in terrorism-related cases. In the course of this work, I have developed working relationships with various political movements and leaders; I have met with heads of state; representatives of foreign bar associations; and I have worked with many attorneys in collective efforts, both in defense of

---

and personal misconduct. These actions in themselves disprove any suggestion that counsel has attempted to curry favor with the NDNY, or would be inclined to do so in any way in the future. Likewise, the second Curcio concern would not only require that counsel perform in an unprofessional manner, but that his conduct would be met on the part of the court or a prosecutor with corresponding professional and ethical lapses, in punishing the accused out of retaliation against counsel. Thirdly, as the Court is well-aware, the undersigned is currently without counsel in the NDNY although it is expected that counsel will enter that case over the next several days. As noted by Your Honor, the trial date in this matter is fixed, and will take place in mid-January of 2014, some six months from now. It beggars the imagination that counsel's matter—which involves extensive review of discovery generated over some five years; significant motions regarding venue; Grand Jury presentation; suppression and government misconduct—followed by the trial itself, could possibly be completed before the onset of the Abu Ghayth trial.

## STANLEY L. COHEN

terrorism cases and in pursuit of civil relief, on behalf of political groups, individuals and victims. I have travelled numerous times to Yemen, Lebanon, Saudi Arabia, Qatar, Palestine, Jordan, Syria, Egypt, Turkey, Algeria and elsewhere. On behalf of my clients, I have gained considerable access to persons in movements typically beyond the reach of American lawyers. I note that in one case I was able to meet with, on a number of occasions, a person described by the U.S. government as a Hezbollah "military commander" in south Lebanon, who provided invaluable information and an affidavit in support of a client whom I represented for thirteen years, in connection with a terrorism prosecution connected to that Movement. I have met with witnesses and members of the political and military wings of Hamas in Syria, Palestine, Jordan and Lebanon, with respect to the Holy Land Foundation case. I have travelled to tribal regions in Yemen as part of the defense of a terrorism prosecution related to various fund-raising activities related to Hamas and al Qaeda. Most recently, I undertook investigative work in Jordan on a terrorism case in the District of New Jersey. These are just a few examples of my experience in the region, and my ability to gain access to persons and movements, in vigorous defense of justice for the accused.

Although the case before Your Honor has only recently been filed, it concerns activities which occurred more than a decade ago. While the indictment includes acts of terrorism within the U.S., all the relevant overt acts as to the Defendant, the nexus to his co-conspirators, and the events detailed and described, occurred overseas—particularly in the Middle East and in south Asia. As Your Honor is also aware, Mr. Abu Ghayth was incarcerated in Iran for more than ten years. Thus, the defense of this case necessarily involves revisiting and reconstructing activities and events at a great remove of time and distance, with potential witnesses located thousands of miles away.

As Your Honor is well-aware, to investigate properly these charges and to develop a defense, given the unique circumstances of this prosecution will require considerable investigative effort and resources overseas. Given differences in time, venues, languages, cultures and political circumstances, this will be a complex undertaking, not effectively accomplished by telephone. Nor can this work be effectively undertaken with proxy investigators or others unrelated to the defense team, as the information must necessarily be gathered and contextualized within a responsive legal strategy to be devised by the attorney.

For all these reasons and others, Mr. Abu Ghayth reached out to me and asked me to assemble a team of lawyers and experts to work under my direction, to assure the best possible defense for him at trial, and work has proceeded accordingly. I have brought together this team with various areas of expertise, to be supervised by my office in a joint effort. To date, I have been to the Middle East once on this matter, and in just several days' time in Doha, I have already interviewed witnesses. I have set in motion follow-up trips, with the first planned for several weeks from now, during which time I expect to meet as many as two dozen potential witnesses in this matter. I anticipate spending much of the summer overseas investigating this case and working on its defense, planning travel to both Turkey and Iran in the coming weeks and months. During my absence from New York, co-counsel on this case will be engaged in other responsibilities and in direct communication with me, under my supervision.

3

## STANLEY L. COHEN

Given counsel's background as well as these attendant circumstances, it should come as no surprise that Mr. Abu Ghayth has exercised a knowing, voluntary and intelligent waiver of any conflict. I would note that while the Government in its most recent submission suggests that—notwithstanding the otherwise valid waiver—Your Honor still maintains the discretion to disqualify me because of the potential conflict, under the circumstances of this case I respectfully disagree.

It is, of course, well-settled that an actual non-waivable conflict of interest exists when the attorney's and the defendant's interests "diverge with respect to a material factual or legal issue or to a course of action," or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client. United States v. Feyer F.3d 110,116 (2d Cir. 2003); United States v. Blau, 159 F.3d. 68, 75 (2d Cir. 1998). *See generally*, Wheat v. United States, 486 U.S. 153 (1988)(non-waivable conflict where same attorney represents three coconspirators of varying stature in complex drug prosecution); United States v. Schwartz, 283 F.3d 76,95-96(2d Cir. 2002)(disqualification mandated where defendant police officer's counsel also had ethical obligations to police union, as well as financial interest in his firm's retainer agreement with police union, where union had divergent interests from defendant); United States v. Jones, 381 F.3d 114 (2d Cir. 2004)(non-waivable conflict where possibility lawyer would become target of grand jury investigation that had indicted his client); United States v. Cain, 671 F.3d 271 (2d Cir, 2010)(lawyer disqualified where potential witness in related grand jury investigation of client for witness tampering in underlying case); Carncross v. Poole, 448 Fed. Ex 150(2d Cir. 2011)(Counsel disqualified where he represented 2 various witnesses against defendant who wished to retain him); United States v. Scala, 266 Fed. Appx. 41 (2d Cir. 2008)(defendant cannot waive actual conflict where counsel invoked fifth amendment rights to resist production of documents related to the prosecution of very client he was representing). Of course, if the court determines that the attorney suffers only from a lesser actual or potential conflict, it may accept the defendant's knowing and intelligent waiver of his right to conflict-free counsel. United States v. Perez, 325 F.3d 115, 125-128 (2d Cir. 2003)(no mandate to disqualify where potential for attorney to become a witness at trial had been eliminated and attorney represented related party in a separate trial). In the case at bar, it is respectfully submitted that no potential issue raised by the Government or identified by the Court rises to the level of a non-waivable actual conflict as that body of law has developed in this Circuit and elsewhere.

Having obtained a sufficient waiver by the Defendant, and in the absence of any actual non-waivable conflict, I respectfully submit that the Curcio process is completed, and that my firm, including myself, and the team of lawyers working of counsel to me, should be permitted to substitute immediately.

Finally, in closing I would note that to the degree that the Government suggests that counsel may be disqualified but that those attorneys of counsel to my firm may be permitted to remain, Mssrs. Stewart and Nubani, and Ms. Dolan constitute the team I have assembled, headed by me, each with particular roles in this case; they serve as counsel of choice to Mr. Abu Ghayth only insofar as they are of counsel to my firm's appearance in this matter, working under my supervision.

4

# STANLEY L. COHEN

Indeed, in complex litigation such as this, it is typical for lead counsel to assemble a team of attorneys and, while retaining responsibility, to oversee all aspects of the defense and to speak on behalf of the collective team as issues arise.

In sum, although the district court retains the discretion in that rare case to reject an otherwise valid waiver if the attorney's suggested conflict jeopardizes the integrity of the judicial proceedings (Perez, 325 F.3d at 12-26) the case before Your Honor is no such matter. Here the potential conflicts are hypothetical in the extreme and simply do not trump the Defendant's fundamental right to counsel of choice. Needless to say, the matter before the Court is no obscure drug case but rather a terrorism prosecution which goes to the very heart of the criminal justice system's ability to ensure that justice be done, in the most difficult of cases. It is of course well-settled that "proceedings must not only be fair, they must appear fair to all who observe them." Wheat v. United States, 486 U.S. 153,160 (1988). In this light, it is respectfully submitted that under the circumstances of this case, to strip Suleiman Abu Ghayth of his counsel of choice will do significant injury to this fundamental principle of American law.

For all these reasons, I respectfully submit that any potential conflict has been waived by the Defendant, and that the defense of this case should proceed with counsel of choice. Given a trial date described by Your Honor as "firm" and fast approaching in January, with little time and much to do in preparation, we would ask for an expeditious resolution of the Curcio issue before the Court.

Respectfully submitted,

Stanley L. Cohen, Esq.
Counsel for Sulaiman Abu Ghayth

CC: AUSA Mike Ferrara, AUSA John Cronan by email attachment.
SLC/ps