UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

  UNITED STATES OF AMERICA      :

       - v. –                     :          S13 98 Cr. 1023 (LAK)

  SULAIMAN ABU GHAYTH,       :
     a/k/a "Suleiman Abu Gayth,"
                               :

                Defendant.
                               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO THE DEFENDANT'S MOTION FOR A TEMPORARY RESTRAINING ORDER


                                         PREET BHARARA
                                         United States Attorney for the
                                         Southern District of New York
                                         One St. Andrew's Plaza
                                         New York, New York 10007

John P. Cronan
Michael Ferrara
Assistant United States Attorneys
     -Of Counsel-

**Table of Contents**

I.   Preliminary Statement ................................................................................................1

II.  Background ................................................................................................................2

   A. The Charges Against Abu Ghayth ..........................................................................2

   B. The United States Government's Declassification of Its Collection of Certain
      Data .........................................................................................................................3

   C. The Defendant's Application for a Temporary Restraining Order ..........................4

III. Argument ....................................................................................................................5

   A. Standard of Review .................................................................................................5

   B. The TRO Application Should Be Denied ...............................................................6

      1. The Prosecutors and Law Enforcement Agents Have Not Been Exposed to
         Communications of the Defense Team ..............................................................6

      2. The Defendant's Attorney's Decision to Avoid Certain Modes of
         Communication Does Not Constitute Irreparable Harm ...................................9

      3. A General Allegation that Unspecified Witnesses Are Dissuaded from
         Speaking with the Defendant's Attorneys Is Not Irreparable Harm ................10

IV.  Conclusion ...............................................................................................................11

## Table of Authorities

**Federal Cases**

*AFA Dispensing Grp. B.V.* v. *Anheuser–Busch, Inc.*, 740 F.Supp.2d 465 (S.D.N.Y. 2010)...........5

*Cacchillo* v. *Insmed, Inc.*, 638 F.3d 401 (2d Cir. 2011) .................................................................5

*Clapper* v. *Amnesty Int'l USA*, 133 S.Ct. 1138 (2013).............................................................8, 11

*Faiveley Transp. Malmo AB* v. *Wabtec Corp.*, 559 F.3d 110 (2d Cir. 2009) .................................5

*Grand River Enter. Six Nations, Ltd.* v. *Pryor*, 481 F.3d 60 (2d Cir. 2007)..................................10

*Hickman* v. *Taylor*, 329 U.S. 495 (1947)........................................................................................6

*Litwin* v. *OceanFreight, Inc.*, 865 F.Supp.2d 385 (S.D.N.Y. 2011)................................................5

*Moore* v. *Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005)...............................5

*Psihoyos* v. *John Wiley & Sons, Inc.*, No. 11 Civ. 1416 (JSR), 2011 WL 4634172
    (S.D.N.Y. Oct. 4, 2011) .............................................................................................................5

*Ram* v. *Lal*, 906 F.Supp.2d 59, 68 (E.D.N.Y. 2012)......................................................................11

*Salinger* v. *Colting*, 607 F.3d 68 (2d Cir. 2010) ............................................................................5

*Simpson* v. *Rodas*, No. 10 Civ. 6670 (CS), 2012 WL 4354832 (S.D.N.Y. Sept. 21, 2012)....4, 5, 6

*Sussman* v. *Crawford*, 488 F.3d 136 (2d Cir. 2007) ......................................................................5

*Upjohn Co.* v. *United States*, 449 U.S. 383 (1981)........................................................................6

*United States* v. *Adlman*, 134 F.3d 1194 (2d Cir. 1998)................................................................6

*USA Network* v. *Jones Intercable, Inc.*, 704 F.Supp. 488 (S.D.N.Y. 1989)..................................11

**Federal Statutes**

18 U.S.C. § 2332................................................................................................................................2

28 U.S.C. § 1651................................................................................................................................8

**Federal Rules**

Federal Rule of Civil Procedure 8 ................................................................................................7

Federal Rule of Civil Procedure 65 ..............................................................................................8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| - v. – | : | S13 98 Cr. 1023 (LAK) |
| SULAIMAN ABU GHAYTH, a/k/a "Suleiman Abu Gayth," | : | |
| | : | |
| Defendant. | | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## I. PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the *Ex Parte* Application for Temporary Restraining Order Barring Government from Monitoring Communications Among and Between Counsel and Others ("TRO Application"), filed by defendant Sulaiman Abu Ghayth, a/k/a "Suleiman Abu Gayth" ("Abu Ghayth" or "the defendant"), on July 3, 2013.

The TRO Application should be summarily denied, because the defendant has come well short of satisfying the high standard for the injunctive relief he seeks. At the heart of the TRO Application is the argument that the prosecutors and agents participating in this case are somehow aware of the substance of the defendant's attorney's communications, and that this is harming the defendant. But the factual premise of this argument is simply wrong. As set forth in the sworn Declaration attached herein, none of the prosecutors or law enforcement agents assigned to this matter have come across, reviewed, seen, or otherwise learned of any such communications. Abu Ghayth therefore cannot carry his burden of establishing that he is suffering any harm, let alone irreparable harm, and that is fatal to the TRO Application.

## II. BACKGROUND

### A. The Charges Against Abu Ghayth

On March 1, 2013, a federal Grand Jury in this District returned a one-count indictment charging Abu Ghayth with conspiring to kill U.S. nationals, in violation of Title 18, United States Code, Section 2332(b). The Government expects that the evidence at trial will establish, among other things, the following.

During early or mid-2001, Abu Ghayth traveled from his home country of Kuwait to Afghanistan, where he met with Usama Bin Laden ("Bin Laden") and agreed to provide support to Bin Laden and al Qaeda. For instance, around May 2001, Abu Ghayth urged individuals at a guest house in Kandahar, Afghanistan, to swear allegiance to Bin Laden. Individuals staying at this guest house were preparing to attend military-style training at an al Qaeda camp. During a small gathering that Abu Ghayth hosted at the guest house, Abu Ghayth discussed the concept of giving *bayat* to Bin Laden, and encouraged the attendees at the guest house to give *bayat* to Bin Laden. Bin Laden also visited this Kandahar guest house. When asked by one of the attendees about what could be done about threats from America, Bin Laden responded, in substance, "They have threatened us and we have threatened them. We have people who are willing to carry souls in their hands."

The evening of the terrorist attacks of September 11, 2001, Bin Laden summoned Abu Ghayth and asked for Abu Ghayth's assistance. Abu Ghayth agreed to provide it. On the morning of September 12, 2001, Abu Ghayth appeared with Bin Laden and Bin Laden's then-deputy Ayman al-Zawahiri. With a firearm by his side, Abu Ghayth spoke on behalf of al Qaeda, warning the United States and its allies that "[a] great army is gathering against you" and called upon "the nation of Islam" to do battle against "the Jews, the Christians, and the

2

Americans." Abu Ghayth continued to appear for al Qaeda in a number of other publicly disseminated videos after September 11, 2001. In one such video, Abu Ghayth addressed the United States Secretary of State and warned that "the storms shall not stop, especially the Airplanes Storm," and advised Muslims, children, and opponents of the United States "not to board any aircraft and not to live in high rises." In another post-September 11, 2001 speech, Abu Ghayth announced that the battle against former U.S. President George W. Bush and former United Kingdom Prime Minister Tony Blair in Afghanistan was ongoing, and declared, on behalf of al Qaeda, that various world leaders (including former Presidents George H.W. Bush, George W. Bush, and William Clinton) were criminals. In this speech, Abu Ghayth again addressed the Secretary of State, warned that terrorist attacks would continue, and advised Muslims, children, and opponents of the United States to avoid airliners and high rise buildings.

Trial has been scheduled to commence on January 7, 2014.

### B. The United States Government's Declassification of Its Collection of Certain Data

On June 6, 2013, in the wake of unauthorized disclosures in the media of a classified judicial order, James R. Clapper, Director of National Intelligence, released a statement announcing the declassification of certain previously classified information involving a program for collection of certain telephony metadata. That statement is attached herewith. *See* Exhibit A (http://www.dni.gov/index.php/newsroom/press-releases/191-press-releases-2013/868-dni-statement-on-recent-unauthorized-disclosures-of-classified-information). Among other things, Director Clapper stated:

> The program does not allow the Government to listen in on anyone's phone calls. The information acquired does not include the content of any communications or the identity of any subscriber. The only type of information acquired under the Court's order is telephony metadata, such as telephone numbers dialed and length of calls.

3

*Id.*

Director Clapper released another statement on the same date regarding the unauthorized disclosures of other information in the media with respect to separate foreign intelligence collection pursuant to Section 702 of the Foreign Intelligence Surveillance Act:

> The Guardian and The Washington Post articles refer to collection of communications pursuant to Section 702 of the Foreign Intelligence Surveillance Act. They contain numerous inaccuracies. Section 702 is a provision of FISA that is designed to facilitate the acquisition of foreign intelligence information concerning non-U.S. persons located outside the United States. It cannot be used to intentionally target any U.S. citizen, any other U.S. person, or anyone located within the United States.

*See* Exhibit B (http://www.odni.gov/index.php/newsroom/press-releases/191-press-releases-2013/869-dni-statement-on-activities-authorized-under-section-702-of-fisa).

### C. The Defendant's Application for a Temporary Restraining Order

On July 3, 2013, the defendant filed the TRO Application. The defendant seeks an order enjoining the United States from conducting certain surveillance, and enjoining "those agencies and agents who engaged in such surveillance from providing or sharing any such information, data, and communications with the Office of the United States Attorney, the AUSA's, and the case agents assigned to the prosecution of this matter." TRO Application at pp. 1-2.

In support of this request for relief, the defendant argues that, in the wake of the unauthorized disclosures alluded to above, *see supra* at I.B, he has been harmed in three ways. *See generally Simpson* v. *Rodas*, No. 10 Civ. 6670 (CS), 2012 WL 4354832, at *10 (S.D.N.Y. Sept. 21, 2012) (party seeking a temporary restraining order must show, *inter alia*, "irreparable harm"). First, the defendant claims that the referenced electronic surveillance has given the prosecution a trial advantage, by permitting the Government to learn the defendant's trial strategy. *See* TRO Application ¶ 20. Second, the defendant contends that the defense team has

4

been forced to engage in different modes of communications.  *See id.* ¶ 20.  And third, the defendant claims that potential witnesses have been dissuaded from coming forward to assist him.  *See id.* p. 11 n. 13.

### III. ARGUMENT

#### A. Standard of Review

"A temporary restraining order, like a preliminary injunction, 'is an extraordinary remedy never awarded as of right.'"  *Litwin* v. *OceanFreight, Inc.*, 865 F.Supp.2d 385, 391 (S.D.N.Y. 2011) (Engelmayer, J.) (quoting *Salinger* v. *Colting*, 607 F.3d 68, 79 (2d Cir. 2010)).  A party seeking a temporary restraining order generally "'must show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."  *Simpson*, 2012 WL 4354832, at *10 (quoting *Cacchillo* v. *Insmed, Inc.*, 638 F.3d 401, 405–06 (2d Cir. 2011)); *accord Faiveley Transp. Malmo AB* v. *Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009); *Psihoyos* v. *John Wiley & Sons, Inc.*, No. 11 Civ. 1416 (JSR), 2011 WL 4634172, at *1 (S.D.N.Y. Oct. 4, 2011); *see AFA Dispensing Grp. B.V.* v. *Anheuser–Busch, Inc.*, 740 F.Supp.2d 465, 471 (S.D.N.Y. 2010) ("It is well established that the standard for an entry of a temporary restraining order is the same as for a preliminary injunction.").  Because preliminary injunctive relief is such "an extraordinary and drastic remedy," it "should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Sussman* v. *Crawford*, 488 F.3d 136, 140 (2d Cir. 2007); *accord Moore* v. *Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005).

### B. The TRO Application Should Be Denied

The TRO Application should be summarily denied because the defendant cannot carry his burden of showing "irreparable harm." *See generally Simpson*, 2012 WL 4354832, at *10 (party seeking a temporary restraining order must show, *inter alia*, "irreparable harm"). As noted above, such harm is said by the defendant to fall into three categories. Each is discussed below in turn.

#### 1. The Prosecutors and Law Enforcement Agents Have Not Been Exposed to Communications of the Defense Team

The defendant's core contention is that the Government has used electronic surveillance to gain a litigation advantage. "The electronic surveillance of counsel and their work in this case has permitted – and, unless stopped, will continue to permit – the Government to learn sensitive and privileged work product and strategy to which it has no lawful right." TRO Application ¶ 20. This argument rests on the premise that the Government has interfered with the defense's "zone of privacy in which counsel can prepare and develop legal theories and strategy 'free from intrusion by his adversaries with an eye toward litigation.'" *Id.* ¶ 25 (quoting *United States* v. *Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998)); *see also id.* ¶ 24 ("'In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from intrusion by opposing parties and their counsel.'" (quoting *Hickman* v. *Taylor*, 329 U.S. 495, 510-11 (1947))); *cf. id.* ¶ 28 (citing the "'strong public policy' toward maintaining the privacy of an attorney's work product" (quoting *Upjohn Co.* v. *United States*, 449 U.S. 383, 397-98 (1981))).

But the factual premise of this argument is simply inaccurate. Whatever the contours of any electronic surveillance that the United States may or may not be conducting,[1] no member of the prosecution team has come upon, reviewed, seen, heard, or in any way learned of any privileged communications of any of Abu Ghayth's current criminal defense attorneys (Stanley Cohen, Geoffrey Stewart, Zoe Dolan, and Ashraf Nubani) or their staff, or of any of Abu Ghayth's former criminal defense attorneys (Philip Weinstein, Martin Cohen, and Jonathan Marvinny) or their staff. *See* Declaration of John P. Cronan, July 5, 2013, ¶ 2. Indeed, no member of the prosecution team has come to learn *anything* about Abu Ghayth's defense team's litigation or trial strategy, other than from statements made by Abu Ghayth's counsel in Court, in the media, or in conversations with the Government. *See id.* Nor have any of the prosecutors learned anything about Abu Ghayth's defense team's communications with potential witnesses, about legal matters, or about any subject at all. *See id.*

Should any member of the prosecution team somehow be exposed to the content of defense counsel's communications, we will of course immediately bring that information to the attention of the Court, as we would in any case. Indeed, to the extent any potentially privileged communications come to the attention of the trial team --- which to date emphatically has not occurred --- those communications would be reviewed by a "taint team" of prosecutors who are not assigned to this case. *See id.* ¶ 4.

In addition, the undersigned have confirmed that *none* of the law enforcement agents assigned to this case, including both their supervisors and the agents who interviewed Abu

---

[1] Citing Rule 8(b)(6) of the Federal Rules of Civil Procedure, the defense contends that the Government's letter confirming that it comprehended its discovery obligation was somehow an admission of his accusations that the defense counsel had been subject to electronic monitoring. TRO Application ¶ 16. This contention is without merit. Rule 8(b)(6) applies to the failure of a party to deny an allegation in a civil pleading.

7

Ghayth on March 1, 2013, have been exposed to any defense attorney communications. *See id.* ¶ 3. Specifically, none of these agents has come upon, reviewed, seen, heard, or in any way learned of any communications of any members of Abu Ghayth's current or prior defense team, including their staff. *See id.* Moreover, other than statements at judicial proceedings, in the media, or in conversations with the Government, none of these agents has come to learn, in any way at all, anything regarding Abu Ghayth's defense team's litigation or trial strategy. Nor have these agents come to learn anything about Abu Ghayth's defense team's communications with potential witnesses, about legal matters, or about any subject at all. *See id.*

The defendant cannot claim he has been harmed by his adversary's knowledge of attorney communications, *see* TRO Application ¶¶ 20, 24, 25, 29, because the prosecutors and agents working on this matter have had zero exposure to any such communications.[2]

---

[2] To the extent that the defendant's attorneys believe that they are subject to surveillance, and that such surveillance is causing them injury that is wholly separate and apart from any impact on this prosecution, then their claim should not be resolved in connection with this prosecution. This is because the resolution of a claim that has no impact on a case is not undertaken in aid of the Court's jurisdiction over that case. *See generally* 28 U.S.C. § 1651(a) (empowering federal Courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions").

Should the defendant's attorneys believe that surveillance is causing them injury apart from any impact on this prosecution, they can seek, for example, to file a civil action --- with themselves as the plaintiffs, and with the appropriate United States Government entities or officials named as defendants. *Cf. Clapper* v. *Amnesty Int'l USA*, 133 S.Ct. 1138 (2013) (describing litigation in which respondents, who were attorneys and organizations whose work entailed communications with individuals located abroad, sought permanent injunction in connection with certain United States Government surveillance); Fed. R. Civ. P. 65.

### 2. The Defendant's Attorney's Decision to Avoid Certain Modes of Communication Does Not Constitute Irreparable Harm

Next, the TRO Application argues that the defendant has suffered "irreparable harm" because, in light of certain unauthorized disclosures, *see supra* at I.B, Abu Ghayth's defense attorneys have chosen to avoid certain modes of communication. *See* TRO Application ¶ 20 ("In addition, counsel have been forced to limit or cease engaging in certain telephone, text messages, e-mail and Skype conversations among themselves and with others and are compelled to travel abroad to have in-person conversations typically unnecessary, thereby undertaking costly and burdensome measures to protect the confidentiality of sensitive communications."); *id.* p. 11 n. 13 ("In this regard, co-counsel and members of the defense team have often been forced to avoid the most sensitive discussions, talk in generalities rather than specifics, or travel for in person meetings."). The defense team's decision to talk in person, rather than by phone or e-mail, is hardly a harm at all, let alone an "irreparable" one --- especially on the all-but non-existent record now before the Court as to who the defense attorneys have assertedly been impeded from communicating with, where those interlocutors are, why in-person communications are sub-optimal, and how this may have had a financial or other impact on the defense.

Moreover, as previously discussed, the telephony metadata program does not involve the collection of content of communications or the identity of any subscriber. *See* Exhibit A (Director Clapper: "The program does not allow the Government to listen in on anyone's phone calls. The information acquired does not include the content of any communications or the identity of any subscriber. The only type of information acquired under the Court's order is telephony metadata, such as telephone numbers dialed and length of calls."). Furthermore, collection pursuant to Section 702 of the Foreign Intelligence Surveillance Act cannot be used to intentionally target any U.S. citizen, any other U.S. person, or anyone located within the United

9

States (such as the defendant's lawyers). *See* Exhibit B (Director Clapper: Section 702 "cannot be used to intentionally target any U.S. citizen, any other U.S. person, or anyone located within the United States.").

To the extent the defense attorneys have now chosen to avoid certain means of communication, based apparently on speculation, that is of course their decision. But that can hardly serve as a basis for injunctive relief. *See generally Grand River Enter. Six Nations, Ltd.* v. *Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) ("To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent . . . ." (internal quotation marks omitted)); *cf. Clapper* v. *Amnesty Int'l USA*, 133 S.Ct. 1138, 1150-53 (2013) (rejecting respondents' argument for standing based on measures they have undertaken to avoid surveillance under the Foreign Intelligence Surveillance Act --- including avoiding certain e-mail and phone conversations, speaking in generalities rather than specifics, and traveling for in-person conversations --- concluding that these "self-inflicted injuries are not fairly traceable to the Government's purported activities under § 1881a, and [the respondents'] subjective fear of surveillance does not give rise to standing").

### 3. A General Allegation that Unspecified Witnesses Are Dissuaded from Speaking with the Defendant's Attorneys Is Not Irreparable Harm

Finally, the defendant suggests that he has suffered irreparable harm because potential witnesses are being dissuaded from speaking with his defense team. *See* TRO Application ¶ 21 ("The chilling effect of such surveillance on witnesses or potential witnesses themselves cannot be underestimated in a high-profile matter such as the one at bar . . . ."); *id.* p. 11 n. 14 ("Knowledge that their conversations may be overheard by U.S. government agencies chills persons outside the United States who are hesitant to assist counsel with the preparation of this

case from engaging in discussions by electronic means.  Among others, these persons include experts, investigators, attorneys, family members and others who are located abroad."). But the defendant has failed to identify any particular potential witness who has actually expressed this concern.  Merely invoking the general specter that witnesses are unwilling to speak with defense attorneys, without any effort to make a concrete showing of injury, cannot provide the basis for injunctive relief.  *See Ram* v. *Lal*, 906 F.Supp.2d 59, 68 (E.D.N.Y. 2012) ("It is equally well-established that a preliminary injunction is 'an extraordinary remedy' that 'should issue not upon a plaintiff's imaginative, worst case scenario of the consequences flowing from the defendant's alleged wrong but upon a concrete showing of imminent irreparable injury.'" (quoting *USA Network* v. *Jones Intercable, Inc.*, 704 F.Supp. 488, 491 (S.D.N.Y. 1989))).

### IV. CONCLUSION

In sum, Abu Ghayth has not established that he has suffered any irreparable harm, and thus has failed to carry his burden for injunctive relief.  His application for a temporary restraining order therefore should be denied.

Dated: New York, New York
       July 8, 2013

                                    Respectfully submitted,

                                    PREET BHARARA
                                    United States Attorney for the
                                    Southern District of New York


                            By:     __/s/__John P. Cronan_____
                                    John P. Cronan
                                    Michael Ferrara
                                    Assistant United States Attorneys
                                    Tel: (212) 637-2779 / -2526
                                    Fax: (212) 637-0097

**AFFIRMATION OF SERVICE**

JOHN P. CRONAN, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury:

I am an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York. On July 8, 2013, I caused copies of the Memorandum of Law of the United States of America in Opposition to the Defendant's Motion for a Temporary Restraining Order, with attached exhibits, and the Declaration of John P. Cronan, to be delivered by electronic mail to:

>Stanley Cohen, Esq.
>stanleycohenlaw@verizon.net
>
>Geoffrey Stewart, Esq.
>gstewart.defender@gmail.com
>
>Ashraf Nubani, Esq.
>awn@awnpointlaw.com
>
>Zoe Dolan, Esq.
>zdolan@gmail.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: New York, New York
July 8, 2013

_/s/__John P. Cronan_____
John P. Cronan
Assistant United States Attorney
Tel: (212) 637-2779
Fax: (212) 637-0097