# Stanley L. Cohen & Associates, LLC
## ATTORNEYS AT LAW

# DOCKET

119 AVENUE D, 5TH FLOOR
NEW YORK, N.Y. 10009 USA

Hon. Lewis A. Kaplan
United States District Judge, SDNY
Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312



JUDGE KAPLAN'S CHAMBERS

BY HAND

10 September 2013



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/13/13

### Re: United States v. Sulaiman Abu Ghayth, 98-CR-1023

Dear Judge:

Your Honor set a hearing scheduled for 17 September on the Defendant's motion to suppress a statement attributed to him. For the reasons to follow, I am respectfully requesting that at the conclusion of the Government's case on the hearing, the defense presentation of its case be continued for twenty days.

In this matter, the Government did not object to a hearing on the Defendant's motion to suppress the statement, acknowledging a dispute over various facts related to the motion. In this regard, I note that Defendant has moved to suppress the statement on various grounds, including a violation of his right to counsel, the fact that he did not receive timely and complete Miranda warnings, and the fact that the statement was the fruit of an illegal seizure. In addition, and for purposes most important to this application, Mr. Abu Ghayth has argued that the manner and means of his transport and interrogation were such that it rendered his statement involuntary as a matter of law, as being so much the result of torture and/or impermissible sensory deprivation.

In support of the Defendant's argument on this last point, we provided Your Honor with various findings of international bodies, and reports from both the CIA and the FBI, all of which are probative of the issues of voluntariness, and of conditions of confinement, transportation and interrogations such as are presented in this case. In this particular argument, the defense has spent a considerable amount of time reaching out to various experts, including physicians,

psychiatrists and forensic psychologists who are involved in these matters, and who in fact have testified in other like proceedings where similar claims have been raised.

Initially it appeared that our efforts would prove fruitful, as there appeared to be a good cross-section of experts on these particular issues practicing locally. For more than a month, defense was counseled by a number of experts, most of whom initially expressed great interest in the issues before the Court, and a willingness to assist the defense on this matter. Regrettably, each such expert ultimately bowed out, citing the notoriety of the case.

Subsequently, we were able—we thought—to retain the services of a physician who is a widely-recognized expert in this field, and who in fact has trained more than 1,000 federal law enforcement agents in proper interrogation techniques. Just last week in preparing this witness, we learned that he believed there may be a potential conflict of interest, and he withdrew, although citing no case and no objective indicator of any such conflict. Nevertheless, this physician referred us to an expert forensic psychologist who has provided expert opinion hundreds of times in his field—both for the defense and often for federal prosecutors—and has worked on various cases involving interrogation techniques of persons in Guantanamo Bay, and has published in the field.

Just yesterday, an appointment had been set for the final meeting with this forensic psychologist in advance of his expected expert testimony. Indeed, several days ago I notified the Government that we intended to identify our witness before the hearing, and provide related material.

However, yesterday, we received an email from the expert, advising that he was withdrawing from the case and in so doing, he specifically noted that he had been "warned" by various persons not to assist the defense in this matter; he also noted that he feared potential economic loss from the Justice Department in terms of future employment as an expert on future prosecutions. The witness specifically wrote, "Given that I work for the U.S. Attorney's office with some frequency, I think that relationship would be sorely jeopardized by taking this case."

Before proceeding further, let me be clear that I am not suggesting—nor do I believe the doctor suggests in his communication—that the US Attorney's office or indeed the prosecutors in this matter played any role whatsoever in the expert's precipitous withdrawal from the case.

Be that as it may, Abu Ghayth is now left on the eve of the suppression hearing with no expert witness on an issue essential to his claim—namely, the voluntariness of his statement. It has become clear over the last several weeks that we simply may not locate an expert in the local community with sufficient experience in the field who is not intimidated by the notoriety of the case, or uncomfortable with the potential consequence of being publicly connected to its defense.

Upon receipt of the email yesterday, we immediately began the process of expanding our search for another expert, and we are presently initiating discussions with one on the west coast of the United States, and with still others in Canada and in Europe, who possess expertise in this

# STANLEY L. COHEN

particular field. This process will necessarily take some period to conclude, particularly if the expert is based outside of the United States.

For all these reasons we would respectfully ask that Your Honor continue the defense case on the motion to suppress for twenty days. I have spoken to the Government as to this application, and it advises me that it takes no position on the instant request.

Sincerely Yours,

Stanley L. Cohen, Esq.
Counsel for Sulaiman Abu Ghayth

CC: AUSA Michael Ferrara and AUSA John Cronan, by Email Attachment.
SLC/ps