

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 30, 2013

BY HAND

The Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
Daniel Patrick Moynihan
  United States Courthouse
500 Pearl Street, Chambers 2240
New York, New York 10007

      Re:    United States v. Abu Ghayth
                S13 98 Cr. 1023 (LAK)

Dear Judge Kaplan:

      The Government respectfully writes to set forth its position that the Court should (1) give little or no weight to defendant Sulaiman Abu Ghayth's affidavit in support of his motion to suppress statements he made to U.S. law enforcement on February 28 and March 1, 2013; and (2) preclude expert testimony regarding the voluntariness of Abu Ghayth's Miranda waiver and/or statement to U.S. law enforcement.

I.      Abu Ghayth's Affidavit

      Courts routinely give little weight to affidavits of witnesses who do not testify, instead crediting the testimony of live witnesses who are subject to cross-examination. E.g., United States v. Acosta, No. S1 12 Cr. 224 (PGG), 2013 WL 1890337, at *11 (S.D.N.Y. May 6, 2013); United States v. James, No. 10 Cr. 1293 (RPP), 2011 WL 6306721, at *7 (S.D.N.Y. Dec. 16, 2011); United States v. Pena Ontiveros, 547 F. Supp. 2d 323, 333 (S.D.N.Y. 2008) (where defendants did not testify, expressly rejecting the assertions in their affidavits); United States v. Al-Marri, 230 F. Supp. 2d 535, 539 (S.D.N.Y. 2002); United States v. Frank, 8 F. Supp. 2d 284, 291 n.2 (S.D.N.Y. 1998); accord United States v. Gardner, 611 F.2d 770, 774 n.2 (9th Cir. 1980). This approach—which is standard practice in this District—makes sense: Live testimony, tested by cross-examination, allows the Court to judge a witness's demeanor and veracity, and is thus more reliable than untested assertions in an affidavit. The Court should therefore give little if any weight to Abu Ghayth's declaration, and credit the testimony of the witnesses at the hearing.

II.   Expert Testimony

As the Government understands it, the defense intends to call an expert to testify as to whether Abu Ghayth's Miranda waiver and post-arrest statement were voluntarily made. The expert would apparently say that Abu Ghayth's waiver and statement were involuntarily due to Abu Ghayth's compromised mental state as a result of his treatment during the years he spent in foreign custody. The Court should preclude such testimony.

The proposed expert testimony is virtually identical to that in United States v. Yousef, 925 F. Supp. 1063 (S.D.N.Y. 1996), aff'd, 327 F.3d 56 (2d Cir. 2003). There, defendant Murad moved to suppress statements he had made to U.S. law enforcement during a flight to the United States from the Philippines, where he had been in the custody of Philippine authorities. 925 F. Supp. at 1067. During a hearing on that issue, Murad called a psychiatrist who testified that Murad was suffering from post-traumatic stress disorder at the time he was questioned on the plane to the United States, and that he therefore lacked the capacity to voluntarily and knowingly waive his rights. Id. at 1071. Murad argued that the statement given to U.S. law enforcement "was the result of the continued effects of alleged mistreatment suffered while in the custody of Philippines law enforcement officials." Id. at 1077.

The Yousef court concluded that even if it credited the psychiatrist's conclusion, "Murad's psychological state at the time the statement was given, without a showing of official coercion, does not dispose of the question of voluntariness." Id. (citing Colorado v. Connelly, 479 U.S. 157, 164 (1986) (rejecting conclusion that "a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness'")). As there was no allegation in Yousef that the Federal Bureau of Investigation agents who had questioned Murad "in any way threatened, coerced, or tricked him into giving a statement," the court found the circumstances of the questioning not unduly coercive and that Murad had made a knowing and voluntary waiver of his rights. Id.; see also United States v. Bin Laden, 132 F. Supp. 2d 198, 213 (S.D.N.Y. 2001) ("The 'compulsion' experienced by Odeh, if any, was the product of his own internal wishes and not of any coercive conduct on the part of U.S. personnel.").

Both Yousef and Bin Laden relied on Connelly. In Connelly, the defendant, who was later diagnosed as mentally ill, approached a police officer and confessed to a murder. 479 U.S. at 160-61. At a hearing to suppress that confession, a psychiatrist testified that at the time of the confession, Connelly had been in a psychotic state and had been following the "voice of God," which had instructed him to confess. Id. at 161. The Court held that the confession was nevertheless voluntary, as "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." Id. at 164.

Noting that "[t]he purpose of excluding evidence seized in violation of the Constitution is to substantially deter future violations of the Constitution," id. at 166, the Court emphasized the "essential link between coercive activity of the State, on the one hand, and a resulting confession by a defendant, on the other." Id. at 165. "The most outrageous behavior by a private party

Hon. Lewis A. Kaplan
September 30, 2013
Page 3 of 4

seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process Clause." Id. at 166. The Court therefore held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Id. at 167; see also United States v. Hughes, 640 F.3d 428, 438-40 (1st Cir. 2011) (rejecting defendant's claim that officers, during post-arrest interview of defendant, had taken advantage of the defendant's "fragile mental state" and "the onset of [a] panic attack," concluding that statement was voluntary, and noting that where "a person's compromised mental state is known to interrogating officers, a lesser quantum of coercion is required to call an ensuing confession into legitimate question," though "some significantly probative evidence of coercion is required"); United States v. Cody, 498 F.3d 582, 588 (6th Cir. 2007) (rejecting defendant's argument that his statements were not voluntary in light of the suicidal tendencies that he had been experiencing, and which he had expressed to officers); Cunningham v. City of Wenatchee, 345 F.3d 802, 811 (9th Cir. 2003) ("Cunningham's mental disorder cannot invalidate his confession because he has not first shown that [the police officer] used coercive tactics."); United States v. Lawal, 231 F.3d 1045, 1048 (7th Cir. 2000) ("Absent a showing of some type of official coercion[,] a defendant's personal characteristics alone are insufficient to render a confession involuntary." (internal quotation marks, ellipsis, and alteration omitted)); Coe v. Bell, 161 F.3d 320, 341 (6th Cir. 1998) ("To the extent that Coe argued that his statements were the product of his gullibility and of leading questions, the proper vehicle for such claims is cross-examination at trial. The proper inquiry under Miranda is only whether the government coerced the statement, not whether the statement was the product of Coe's abstract free will.").

     To succeed on his motion, therefore, Abu Ghayth must point to evidence of U.S. Government coercion. He cannot do so because all of Abu Ghayth's interactions with U.S. law enforcement are now in the record and, as the Court observed, the record is devoid of any evidence of such coercion. And to the extent Abu Ghayth intends to call an expert witness to testify that Abu Ghayth's conditions of confinement overseas affected his ability to knowingly and voluntarily waive his Miranda rights, such testimony is irrelevant in light of Connelly and its progeny.[1]

     In any event, the Court has heard the eyewitness testimony and an expert would not be helpful. See Fed. R. Crim. P. 702(a) (requiring that expert's specialized knowledge "help the trier of fact to understand the evidence or to determine a fact in issue"). There is nothing complicated about the circumstances of the interview at issue: After being turned over to U.S. law enforcement, Abu Ghayth was examined by a medic, offered food and water, and advised of his Miranda rights, which he waived. Abu Ghayth, who was shackled throughout the approximately 10-hour flight, was given multiple opportunities to use the bathroom, pray, eat, drink, and rest. During breaks, black-out goggles and hard earmuffs were placed over his eyes and ears. When Abu Ghayth complained about the hard earmuffs, soft earplugs were used

---

[1] The defense has requested permission to make classified discovery available to their proposed expert witness, who we understand has an appropriate security clearance. If the Court agrees that the expert's testimony is irrelevant and intends to preclude that testimony, then the expert does not have a "need to know" the classified information and it should not be disclosed to him.

Hon. Lewis A. Kaplan
September 30, 2013
Page 4 of 4

instead. Perhaps most importantly, when Abu Ghayth was advised of his right to a speedy presentment, he did not waive that right, demonstrating beyond doubt that Abu Ghayth was not acting involuntarily and was not afraid to exercise his rights. Finally, as discussed above, to the extent assertions in Abu Ghayth's affidavit are inconsistent with the testimony of the witnesses, the Court should give those assertions little or no weight.

      For all of these reasons, the proposed expert testimony is irrelevant and should be precluded.

      Respectfully submitted,

      PREET BHARARA
      United States Attorney
      Southern District of New York

By: _____
      John P. Cronan
      Nicholas J. Lewin
      Michael Ferrara
      Assistant United States Attorneys
      212-637-2779 / -2337 / -2526

cc:  Stanley L. Cohen, Esq.
     Geoffrey S. Stewart, Esq.
     Zoe J. Dolan, Esq.
     Ashraf W. Nubani, Esq.