UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA

                                                                                                                  No. S14 98-CR-1023
              v.                                                                                                     (LAK)

Sulaiman ABU GHAYTH,

                Defendant.
-----------------------------------------------------------x

### DEFENSE REPLY TO THE GOVERNMENT OPPOSITION TO DEFENDANT'S MOTION FOR RULE 15 DEPOSITION OF WITNESS SALIM AHMED HAMDAN

Stanley L. Cohen, Esq.
Geoffrey S. Stewart, Esq.
Ashraf Nubani, Esq.
Zoe Dolan, Esq.

*Attorneys for SULAIMAN ABU GHAYTH*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
UNITED STATES OF AMERICA

            v.                                No. S14  98-CR-1023
                                                     (LAK)

Sulaiman ABU GHAYTH,

                      Defendant.
---------------------------------------------------------x

## DEFENSE REPLY TO THE GOVERNMENT OPPOSITION TO DEFENDANT'S MOTION FOR RULE 15 DEPOSITION OF WITNESS SALIM AHMED HAMDAN

      COMES NOW Defendant Sulaiman Abu Ghayth who, by and through counsel, hereby makes Reply to the Government's brief and memorandum opposing his motion for the Rule 15 deposition of witness Salim Ahmed Hamdan.

Dated: New York, New York
On this 31 December 2013                      Respectfully Submitted,

                                                               Stanley L. Cohen, Esq.
                                                               Geoffrey S. Stewart, Esq.
                                                               Ashraf Nubani, Esq.
                                                               Zoe Dolan, Esq.

                                                               *Attorneys for SULAIMAN ABU GHAYTH*

## P<small>RELIMINARY</small> S<small>TATEMENT</small>[1]

Sulaiman Abu Ghayth was charged by Indictment on March 7, 2013 with one count of conspiracy to kill United States nationals in violation of 18 U.S.C. §§ 2332(b) (herein, "Count I"). *See* Dkt. #1154. On December 20, 2013, the Government filed a Superseding Indictment that, in addition to the original charge of violating 18 U.S.C. §§ 2332(b), charges Mr. Abu Ghayth with conspiracy to provide material support and resources to terrorists (18 U.S.C. § 2339A(b); herein, "Count II") and providing material support and resources to terrorists (18 U.S.C. § 2339A(b); herein, "Count III"). *See* Dkt. #1409.

The Superseding Indictment specifically alleges: 1) Mr. Abu Ghayth "served" al Qaeda by urging others to swear an oath of allegiance (or "*bayat*") to Usama Bin Laden ("Bin Laden") at a guesthouse in Kandahar, Afghanistan in or about May 2001; 2) prior to September 11, 2001, Mr. Abu Ghayth personally told Bin Laden that he (Mr. Abu Ghayth) would assist Bin Laden by "giving speeches and appearing in al Qaeda propaganda for the purpose of recruiting additional al Qaeda personnel;" 3) on September 11, 2001, Mr. Abu Ghayth was summoned for "assistance" of an unknown nature by Bin Laden; and 4) Mr. Abu Ghayth gave speeches and appeared in videos on behalf of al Qaeda in the wake of the attacks of September 11, 2001. *See* Dkt. #1409.

The Government opposes allowing the testimony of Mr. Hamdan, whose testimony is

---

[1] The instant Reply memorandum is made in support of Defendant's Motion for Rule 15 Deposition of Mr. Hamdan, and is being filed simultaneously, albeit as a discrete submission, with the Defendant's Response in Opposition to the Government's own Rule 15 application, with respect to its own proposed witness. As such, and given the interchange between the arguments in either motion, the Defendant employs like-content in the Preliminary Statement of each submission.

REPLY in Support of Defendant's Motion/Page **2**

unquestionably material and who is—both as a result of his treatment at the hands of the Government and by force of law—indisputably unavailable.  Mr. Hamdan was formerly Bin Laden's personal driver and bodyguard from the earliest days of al Qaeda, through the period of the Twin Embassy bombings in Kenya and Tanzania and the attack on the U.S.S. Cole, until sometime after the attacks of September 11, 2001 and in that role, he knew Abu Ghayth during the relevant time period, witnessed many of the events underlying the instant charges, was familiar with the leadership and infrastructure of al Qaeda and—unlike, for example, the Cooperating Witness,[2] a prospective witness for the Government—he can speak directly to the culpability of Mr. Abu Ghayth, or lack thereof.

The Government has repeatedly touted Mr. Hamdan's knowledge and credibility in other proceedings, once calling him "the best resource available" on al Qaeda.  Mr. Hamdan was said to be "fully and completely truthful with [the FBI] during [its] interviews" with Mr. Hamdan.  *See* Dkt. #1397.  The Government has conceded that information provided by Mr. Hamdan to the Government was "accurate, checked out, [and] corroborated right on the money."  *See* Dkt. #1397.

Conversely, the Government offers the testimony of the CW, who has never known or met Abu Ghayth, did not witness any of the events underlying the instant charges, and whose testimony as to Abu Ghayth is likely inadmissible for lack of foundation.  Compared to Mr. Hamdan, the CW was an outsider with respect to al Qaeda, and spent only a short time in Afghanistan during the relevant time period.  Furthermore, the CW is completely under the control of the Government and would be required to appear in this Court at the whim of the prosecution, under the terms of his cooperation agreement with authorities in the United

---

[2] Hereinafter, "the CW."  By agreement with the Government, at this point, the identity of its Rule 15 witness shall be referred to, for the purposes of this submission, as "CW."

REPLY in Support of Defendant's Motion/Page **3**

Kingdom—a cooperation agreement which the Government brokered with U.K. prosecutors for the express purpose of allowing the CW to testify at trials of other accused al Qaeda defendants.

In attempting to prove the guilt of Mr. Abu Ghayth as to these charges, the Government has moved this Court to allow the testimony of the CW to be taken at trial via live CCTV or, in the alternative, to preserve his testimony by deposition pursuant to Rule 15 of the Federal Rules of Criminal Procedure. At the same time, the Government opposes Mr. Abu Ghayth's motion for the Rule 15 deposition of Salim Ahmed Hamdan. In doing so, the Government takes contradictory positions with respect to the requirements of Rule 15.

In taking these positions, the Government now asks this Court to find material the testimony of a man who has no recollection of the Defendant or any illegal acts attributed to him and find immaterial the testimony of an eyewitness who knew, observed and met with the Defendant during the relevant time period. Likewise, the Government also asks the Court to find *unavailable* a man completely at the mercy of his home government and by agreement, the U.S. Government, while finding *available* a man whose refusal to come to the United States is based not only upon his being forever barred by law, but also derives reasonably enough from his having been imprisoned for years, prosecuted multiple times, and tortured by that same Government.

For the reasons set forth below, it is respectfully submitted that the Government has not only taken contradictory positions, it has failed to offer any reason why the Court should not order the deposition of Mr. Hamdan pursuant to Rule 15 of the Federal Rules of Criminal Procedure, it likewise fails to meet the requirements of Rule 15 in seeking to offer the CW's testimony without his physical appearance at trial.

## LAW AND ARGUMENT

I.   **The Court Should Allow the Rule 15 Deposition of Mr. Hamdan.[3]**

   **A. The Testimony of Salim Ahmed Hamdan is Exculpatory With Respect to Mr. Abu Ghayth.**

Contrary to the assertions in the Government's opposition to the instant motion, the proffered testimony of Salim Ahmed Hamdan is exculpatory as it relates to Mr. Abu Ghayth. Tellingly, the Government only claims that "*[s]ome* of the proffered testimony from Hamdan is actually inculpatory." [emphasis added] *See* Dkt. #1411 at 20. The Government's opposition then cherry-picks certain facts which it contends support its theory of this prosecution in backing up this assertion. Unfortunately for the Government, in evaluating whether a particular witness or piece of evidence is inculpatory or exculpatory, the Court should look to the witness or evidence within the context of the totality of the facts of a particular case. *See generally* Kyles v. Whitley, 514 U.S. 419 (1995); *see also* Brady v. Maryland, 373 U.S. 83 (1963).

The Government's contention that the testimony of Mr. Hamdan with respect to Mr. Abu Ghayth is inculpatory assumes that any association, by any individual with any person associated with al Qaeda, is by definition proof of a conspiracy and thus inculpatory. To the contrary, "mere association" does not a conspiracy make. United States v. Nusraty*,* 867 F.2d 759, 764 (2d Cir. 1989); United States v. Wardell, 2010 U.S. App. LEXIS 543 at *15-16 (10th Cir. 2010). What the Government passes over in its characterization of Mr. Hamdan's testimony is that the question of whether Mr. Hamdan's testimony is inculpatory turns not on who Mr. Abu Ghayth met—but instead turns on the nature of his interactions and relationships with those individuals. *See* United States v. Wardell, 2010 U.S. App. LEXIS 543 at *15-16 (10th Cir. 2010).

---

[3] Mr. Abu Ghayth asks the Court to note that the defense is amenable to present the proposed Hamdan testimony via live closed circuit television at trial rather than via deposition pursuant to Rule 15.

REPLY in Support of Defendant's Motion/Page **5**

The Government is correct in noting that Mr. Hamdan's testimony confirms that Mr. Abu Ghayth was in Afghanistan and met people associated with al Qaeda. As set forth in the original motion on this point, however, Mr. Hamdan's testimony goes directly to the nature of those interactions and directly establishes that Mr. Abu Ghayth was not a member of al Qaeda or any other conspiracy and did not provide material support in the form of personnel to al Qaeda or any other conspiracy.

**B. The Testimony of Mr. Hamdan is Admissible.**

The Government's opposition next contends that much of Mr. Hamdan's proffered testimony is "inadmissible lay opinion testimony." *See* Dkt. #1411 at 23. The Government cites Rule 701 of the Federal Rules of Evidence for the proposition that "[l]ay opinion testimony is only admissible if it is rationally based on the witness's perception and helpful in determining a fact in issue." *See* Dkt. #1411 at 23. By the Government's own criteria, Mr. Hamdan's testimony is admissible.

The defense contends and it is evident in the proffered testimony of Mr. Hamdan that the recollections he will offer in his testimony are his and his alone. Mr. Hamdan is a contemporary and percipient witness to many of the events underlying the instant charges. Furthermore, Mr. Hamdan's access to Bin Laden and other al Qaeda leadership make him indisputably and uniquely knowledgeable about Abu Ghayth's role (or lack thereof) in any conspiracy involving al Qaeda.

Where "fact[s] in issue" are concerned, Mr. Hamdan's proffered testimony goes directly to the nature of Abu Ghayth's interactions with individuals associated with al Qaeda and as such are material to the ultimate question of guilt. Mr. Hamdan's testimony on these points is all the more relevant since the Government plans to call the CW—a witness who has no personal

knowledge of Abu Ghayth or the events underlying the instant charges—to say that the Defendant's mere presence at some places or his being in the presence of some people was in and of itself criminal. Mr. Hamdan will provide testimony on many of these same places and people, but unlike the CW, Mr. Hamdan actually observed Abu Ghayth in these interactions.

In contrast, the Government offers the testimony of the CW, who has no personal knowledge of Abu Ghayth or the events underlying the instant charges.

### C. The Testimony of Mr. Hamdan is Material, Relevant and Exculpatory to the Central Issues of the Case.

The Government asserts, *inter alia*, that the fact that Mr. Hamdan, Bin Laden's personal bodyguard, "never heard Abu Ghayth discuss the strategy, plans, operations, goals, or assignments of al Qaeda or the al Qaeda leadership" is irrelevant. *See* Dkt. #1411 at 25. If that is the case, one wonders what testimony or evidence the Government would consider relevant, given the nature of the charges against Abu Ghayth.

Sulaiman Abu Ghayth's relationship with Bin Laden sits at the heart of this prosecution. The Government alleges in both the original Indictment and the Superseding Indictment that the Defendant was *personally* asked by Bin Laden to make speeches on behalf of al Qaeda as part of a conspiracy which necessarily had to include Bin Laden, and the goal of which was to kill United States nationals and provide material support to terrorists. *See* Dkt. #1154; 1409. As stated above and discussed in Defendant's original motion (*See* Dkt. #1396; 1397), Mr. Hamdan was Bin Laden's personal driver and bodyguard whose position demanded that he be in the presence of Bin Laden at nearly all times during the time period relevant to the Superseding Indictment. As such, Mr. Hamdan's observations and recollections with respect to the relationship between Abu Ghayth and Bin Laden are central to the question of guilt herein. Unless the Government contends that merely having met Bin Laden or other al Qaeda figures is a

REPLY in Support of Defendant's Motion/Page **7**

crime, the Government must prove that the relationship between Abu Ghayth and Bin Laden involved plans to kill United States nationals and provide material support to terrorists. The Government alleges that the Defendant had prior knowledge of the so-called "shoe bomb" plots involving Richard Reid and the CW.  *See* Dkt. #1411. Mr. Hamdan's testimony directly rebuts this assertion. Mr. Hamdan was present during encounters between Abu Ghayth and Bin Laden and has no recollection of the Defendant ever participating in discussions or being apprised of any information involving al Qaeda terrorist attacks or other operations.

The Government further dismisses the myriad facts offered by Mr. Hamdan noting that it does not need to prove the evidence offered by Mr. Hamdan which exonerates Abu Ghayth. Indeed, to convict the Defendant, the Government will be required to prove facts which show his guilt beyond a reasonable doubt. The Government's opposition indicates a failure on its part, however, to comprehend the idea that evidence is not inadmissible simply because it does not jibe with the Government's theory of the case.

With respect to the so-called brevity cards, it is worth noting that the Government's proffer of testimony by the CW on this topic reinforces the materiality of Mr. Hamdan's testimony. Mr. Hamdan, as proffered (*See* Dkt. #1397), will testify that the brevity cards were not used as part of any terrorist conspiracy but instead were haphazardly created and used for a short time to prevent Northern Alliance forces from monitoring the activities of Arab forces fighting against them in Afghanistan. It has also been proffered that Mr. Hamdan will testify that there was no hierarchical value to the cards (that is, having one's name on a brevity card does not signify being a "member" or leader of al Qaeda or any other conspiracy), noting that the cards were also used to identify auto mechanics, visitors, and persons just passing through. Importantly, while two of the recovered brevity cards contain the name of Sulaiman Abu Ghayth,

several others do not.  Finally, the Court should note that missing from the Government's dismissal of the relevance of the proposed Hamdan testimony is the fact that some of the brevity cards, other documents and weapons which it seeks to introduce against Abu Ghayth were themselves recovered from Mr. Hamdan or from a vehicle which he was operating at the time of his capture by Northern Alliance forces.  Under these circumstances Mr. Hamdan alone is uniquely qualified to testify as to the circumstances of their recovery, as well as their meaning and value.

### D. There Are No Countervailing Factors Weighing Against the Taking of a Rule 15 Deposition of Mr. Hamdan.

The Government contends that the deposition of Mr. Hamdan would frustrate rather than advance the interests of justice because the Government may not prosecute him for perjury, should such a circumstance arise.  As set forth in the Declaration of Counsel supporting this Motion (*See* Dkt. #1397), this argument contradicts the voluminous and glowing claims by the Government, prior to the commencement of this prosecution, vouchsafing Mr. Hamdan's credibility.  Furthermore, the proposition that such testimony is precluded as a matter of law because of the inability to prosecute a foreign witness in foreign courts for perjury in a Rule 15 deposition should that circumstance arise, has no support in settled law.[4]

Indeed, this notion was long-since and easily disposed of by the Southern District Court in United States v. Grossman, 2005 U.S. Dist. LEXIS 3135 at *11-12 (S.D.N.Y 2005): "[T]he government asserts that foreign depositions are untrustworthy because they lack a realistic perjury sanction.  However, courts routinely order the taking of foreign depositions when the witness is unavailable and his testimony is material, as is the case here," in *United States v.*

---

[4] Of course the Government's hypothesis ignores its ability to seek to impeach Hamdan on that ground and to forcefully argue that very point to the jury.

REPLY in Support of Defendant's Motion/Page **9**

*Grossman,* 2005 U.S. Dist. LEXIS 3135 at *11-12 (S.D.N.Y 2005); citing *United States v. Johnpoll,* 739 F.2d 702 (2d Cir. 1984) ; *United States v. Sindona,* 636 F.2d 792 (2d Cir. 1980); *United States v. Drogoul,* 1 F.3d 1546 (11th Cir. 1993); *United States v. Korolkov,* 870 F. Supp. 60 (S.D.N.Y. 1994); *United States v. Marcos,* 1990 U.S. Dist. LEXIS 5023 (S.D.N.Y. 1990); *United States v. Ang,* 1986 WL 8710 (W.D.N.Y. 1986); *Sun Myung Moon,* 93 F.R.D. 558 (S.D.N.Y. 1982). Indeed, adopting any *per se* rule such as that announced by the Government here would all but completely frustrate if not eviscerate the purpose of Rule 15.

## CONCLUSION

For the reasons set forth above, Defendant Sulaiman Abu Ghayth hereby respectfully asks that this Court grant his motion pursuant to Rule 15 for the deposition of defense witness, Mr. Salim Ahmed Hamdan.

Dated: December 31, 2013                     Respectfully submitted,

[signature]

Stanley L. Cohen, Esq.
Geoffrey S. Stewart, Esq.
Zoe Dolan, Esq.
Ashraf Nubani, Esq.

*Attorneys for SULAIMAN ABU GHAYTH*