UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,

        -against-                                                                                   S14 98 Crim. 1023 (LAK)

SULAIMAN ABU GHAYTH,

        Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

John P. Cronan
Michael Ferrara
Nicholas J. Lewin
Assistant United States Attorneys
Preet Bharara
UNITED STATES ATTORNEY

Stanley L. Cohen
STANLEY COHEN & ASSOCIATES, LLC

Geoffrey S. Stewart
Zoe Dolan
Ashraf Nubani

*Attorneys for Defendant Sulaiman Abu Ghayth*

LEWIS A. KAPLAN, *District Judge*.

Before this Court are two motions – one by the government and one by defendant – to introduce testimony at trial from witnesses located abroad who allegedly refuse to travel to the United States to testify in person. The government proposes to introduce live testimony of a confidential witness ("CW") at trial through closed-circuit television ("CCTV"). Defendant seeks to take a Rule 15 deposition of Salim Ahmed Hamdan, who is believed to have been Usama Bin Laden's driver from approximately 1998 until November 2001.[1]

*Background*

I.    *The Government's Motion*

The CW was arrested in the United Kingdom in 2003 and was convicted there of offenses relating to his participation in an al Qaeda plot to detonate a shoe bomb on a transatlantic airplane flight.[2] He now has a cooperation agreement with the British government that, among other things, contemplates his assistance in investigations and trials in the United States.[3] The CW has been indicted also in the District of Massachusetts on charges relating to the shoe-bomb plot, and the CW and United States Attorney's Office have been informed that the CW will be arrested if he travels to this country.[4]

The CW allegedly will provide testimony demonstrating that Abu Ghayth "*knowingly*

---

[1] Cohen Decl. [DI 1397] ¶ 7.

[2] Lewin Decl. [DI 1411-1] ¶¶ 9(b)-(c).

[3] Cohen Letter [DI 1416], Ex. B.

[4] DI 1411-1 ¶ 4.

participated in al Qaeda's overall conspiracy to kill Americans."[5] Specifically, the government asserts that the CW will testify that he was involved in a post-9/11 terrorist plot to bomb airplanes in the United States at approximately the same time as Abu Ghayth appeared in videos threatening that "the storm of the airplanes will not stop" and stating "as a word of advice and for emphasis, we strongly advise Muslims in America and the Britain, the children, and those who reject the unjust American policies–we advise them not to board aircraft."[6]

The CW allegedly will testify further that he visited an al Qaeda training camp called Matar that Abu Ghayth also is alleged to have visited.[7] The CW there claims to have "received urban warfare training" that included "training in assassination, weapons and explosives."[8]

II.     *The Defendant's Motion*

Hamdan now is a Yemeni resident who was imprisoned at Guantanamo Bay, Cuba for several years due to his relationship with al Qaeda and bin Laden.[9] The defense asserts that Hamdan refuses to travel to the United States to provide in-person testimony at trial and most likely would not be permitted to travel to this country in any event.[10]

---

[5] Gov. Br. [DI 1411] at 8 (emphasis in original).

[6] DI 1411-1 ¶ 9(b); DI 1411 at 9-10.

[7] DI 1411-1 ¶¶ 9(d)(i)-(ii).

[8] *Id.* ¶ 9(d)(i).

[9] DI 1397 ¶¶ 6-8.

[10] *Id.* ¶¶ 16, 20.

Hamdan's proposed testimony, defendant claims, would show that Hamdan spent considerable time with Bin Laden and met Abu Ghayth on various occasions, but that he did not observe Abu Ghayth engage in any of the acts specified in the indictment and that he does not believe that Abu Ghayth swore an oath to or was a high ranking member of al Qaeda.[11] In addition, Hamdan allegedly would testify that he never saw Abu Ghayth in possession of a brevity card, which apparently was used by al Qaeda and contains coded names and locations of certain individuals.[12] The defense claims Hamdan that would testify that "the brevity cards included the names of some inner circle members and leaders of al Qaeda; some old friends of Usama bin Laden; as well as the names of auto mechanics and persons of no particular importance or consequence, including visitors passing through the Kandahar community."[13]

*Discussion*

I. *Legal Standard*

   A. *CCTV*

The Second Circuit has held that prosecution witnesses may testify through CCTV where the government satisfies the standard for taking a deposition under Rule 15.[14] Such testimony, it held, preserves the criminal defendant's rights under the Confrontation Clause despite

---

[11] *Id.* ¶¶ 21, 23, 27-31, 35-39.

[12] *Id.* ¶ 32.

[13] *Id.* ¶ 33.

[14] *United States v. Gigante*, 166 F.3d 75, 81 (2d Cir. 1999).

the fact that the criminal defendant and witness are not present in the same room.[15] This in part is because it facilitates "1) the giving of testimony under oath; 2) the opportunity for cross-examination; 3) the ability of the fact-finder to observe demeanor evidence; and 4) the reduced risk that a witness will wrongfully implicate an innocent defendant when testifying in his presence."[16]

### B. Rule 15

The Rule 15 standard thus governs both the government's motion and defendant's. It permits parties to "move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice."[17] This standard is met where the "testimony is material to the case and if the witness is unavailable to appear at trial."[18]

To satisfy the materiality requirement, the moving party must make some showing that the proposed testimony exculpates or, in the event that the government is the moving party, inculpates, the defendant.[19] It need not be definitive proof of guilt or innocence,[20] but should be

---

[15] *Id.* at 80.

[16] *Id.* (citing *Maryland v. Craig*, 497 U.S. 836, 845-46 (1990)).

[17] Fed. R. Crim. P. 15(a)(1).

[18] *United States v. Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984).

[19] *United States v. Kelly*, 36 F.3d 1118, 1125 (D.C. Cir. 1994).

[20] *United States v. Bronston*, 321 F. Supp. 1269, 1272 (S.D.N.Y. 1971) ("It is not necessary that defendant show the testimony will surely acquit him.").

more than merely relevant.[21] Furthermore, the proposed testimony must be admissible and non-cumulative of other evidence.[22]

To satisfy the unavailability requirement, the moving party must show that the witness is unable or unwilling to attend trial and that it has made a good faith effort to secure that witness's attendance.[23] Foreign witnesses who are not subject to the government's subpoena power and, despite the moving party's appropriate efforts, refuse to travel to this country to testify routinely are found unavailable.[24]

II. *The CW*

The government has sustained its burden of demonstrating that the CW's testimony would be material, inculpatory evidence against Abu Ghayth. The government asserts that the CW would testify that he was involved in a terrorist plot against the United States to detonate explosives on airplanes. That this plot existed at approximately the same time that Abu Ghayth appeared in videotapes making statements threatening that exact type of attack on the United States tends to show that Abu Ghayth knowingly participated in al Qaeda's conspiracy to kill Americans. According to the government's affidavit, the same senior al Qaeda members who personally were

---

[21] *United States v. Ismaili*, 828 F.2d 153, 161 (3d Cir. 1987).

[22] *United States v. Stein*, 482 F. Supp. 2d 360, 365 (S.D.N.Y. 2007); *United States v. Grossman*, No. S2 03 Cr. 1156 (SHS), 2005 WL 486735, at *3 (S.D.N.Y. Mar. 2, 2005).

[23] *See Johnpoll*, 739 F.2d at 709.

[24] *See, e.g.*, *United States v. Drogoul*, 1 F.3d 1546, 1551-53 (11th Cir. 1993); *Johnpoll*, 739 F.2d at 709; *United States v. Vilar*, 568 F. Supp. 2d 429, 438-39 (S.D.N.Y. 2008); *United States v. Sun Myung Moon*, 93 F.R.D. 558, 559-60 (S.D.N.Y. 1982).

involved in this plot to bomb aircraft in the United States – Abu Hafs al-Masri and Usama bin Laden[25] – appeared in the post-9/11 videos with Abu Ghayth.[26]

The CW's proposed testimony concerning his time at the al Qaeda training camp called Matar is material for similar reasons. Abu Ghayth is said to have admitted giving speeches to trainees at that camp at approximately the same time that the CW was there as a trainee.[27] Testimony that the CW and others at that camp received urban warfare training potentially is probative of Abu Ghayth's knowing involvement in a conspiracy to kill Americans and provision of material assistance to terrorism.

The government has sustained also its burden of showing that the CW is unavailable to testify in person at the trial despite the its good faith efforts to secure his presence. The CW has refused to come to the United States because he fears arrest. This fear apparently is well founded, as both the witness and the prosecutors in this case have been informed that the witness would be arrested if he came to the United States.[28]

Defendant insists that the government simply could extradite the CW to the United States and compel his testimony in that manner. As an initial matter, the good faith requirement

---

[25] DI 1411-1 ¶ 9(b).

[26] *Id.* ¶ 9(d).

[27] *Id.* ¶ 9(d)(i).

[28] *Id.* ¶ 4.

The Court acknowledges that, in some sense, the CW's unavailability is a problem of the government's own making. The same government that seeks the CW's testimony has indicted and threatens to arrest him. This Court, however, will not rule in a manner that effectively requires a coordinate branch of government to choose between two criminal defendants.

does not obligate the government to take such extreme steps to secure a witness's presence at trial. Moreover, the extradition process can be incredibly lengthy and cumbersome and undoubtedly would not be completed in time for trial.[29]

III. *Hamdan*

The defense by all appearances seeks to introduce considerable testimony from Hamdan, some of which would be inculpatory, some irrelevant, and some inadmissible.

Proposed testimony that Abu Ghayth met with bin Laden and that bin Laden "used" him "to give a few religious sermons, and ultimately to add religions 'weight' to the three videos that were aired after 9-11"[30] and that Abu Ghayth gave religious sermons at an al Qaeda camp and guest house if anything would be inculpatory.[31] Testimony that Hamdan did not observe Abu Ghayth urge others to pledge an oath of allegiance to al Qaeda or that he rarely heard bin Laden talk about Abu Ghayth would not be material exculpatory evidence. There is no claim that Hamdan was or would have been by Abu Ghayth's side at all relevant times. Based on the information provided in the Cohen Declaration, there is no reason to believe that the fact that these acts did not occur in Hamdan's presence makes them any less likely to have occurred at all.

Similarly, Hamdan's opinion of Abu Ghayth's role in al Qaeda or reasons for being

---

[29] It took the United States over ten years to extradite Khalid al Fawwaz and Adel Abdel Bary from the United Kingdom to face trial on S7 98 Crim. 1023 (LAK). *See* Steve Swann, *The Extradition Suspects Who Led To Bin Laden*, BBC News (Oct. 5, 2012), http://www.bbc.co.uk/news/uk-19843376.

[30] DI 1397 ¶ 26.

[31] *Id.* ¶¶ 28, 31.

in Afghanistan largely are inadmissible on grounds of relevance or hearsay. The government need not prove that Abu Ghayth was a high ranking al Qaeda official in order to secure a conviction. Any statement that Abu Ghayth made to Hamdan regarding his reasons for being in Afghanistan are classic hearsay.

There are, however, a few topics on which the defense suggests that Hamdan may be able to provide admissible, material testimony. First, he allegedly will testify that an individual's inclusion on a brevity card does not necessarily denote membership in or allegiance to al Qaeda. Travelers, car mechanics, and other innocent bystanders apparently were listed on these cards. This testimony would address directly the government's suggestion that Abu Ghayth's appearance on a brevity card is probative of his guilt.

Second, he allegedly will testify that "the camps were used almost exclusively to train Arab fighters and others to fight against the Northern Alliance alongside the Taliban."[32] Such testimony potentially could weigh against the government's claim that any speeches Abu Ghayth made at such camps were in furtherance of a conspiracy to kill Americans. Thus, there are certain topics on which Hamdan appears to be able to offer material testimony.

Defendant has demonstrated also that Hamdan is unavailable. Despite the defendant's request and offer to pay for all travel expenses, Hamdan has refused to travel to the United States and may in fact be legally barred from coming here.[33]

Finally, the government argues that Hamdan's testimony should not be permitted

---

[32] *Id.* ¶ 40.

[33] Defendant has waived any right he may have had under Rule 15(c) to be present at Hamdan's location during the deposition. *See* DI 1446.

because he would testify from Yemen and the government thus has no mechanisms available to it to ensure that he will testify truthfully. The defense has provided no basis to believe that the United States would be able to extradite Hamdan to stand trial for perjury in the United States. This situation, however, is no different from one in which a witness travels to the United States from a foreign country with no extradition treaty, testifies in court (truthfully or otherwise), and immediately boards a plane to return to his or her home country.[34] The government is entitled to use the lack of a viable enforcement mechanism against Hamdan to impeach his credibility, but this is not a basis for denying defendant's motion.

*Conclusion*

For the foregoing reasons, the government's motion to offer the CW's testimony through CCTV [DI 1411] is granted.

Abu Ghayth's motion to take a Rule 15 deposition of Salim Ahmed Hamdan [DI 1396] is granted to the extent that the defense may depose Hamdan under the following conditions: The deposition will take place over CCTV and must be completed by February 15, 2014.[35] Each side will be afforded three hours to question the witness. The topics will be limited to brevity cards, the purpose of al Qaeda training camps that Abu Ghayth visited, and lay opinion testimony with regard to defendant's role in al Qaeda. All objections to admissibility save those as to the form of questions are preserved for later determination without the need for such objections on the record.

---

[34] *Cf.*, Grossman, 2005 WL 486735, at *4 ("Finally, the government asserts that foreign depositions are untrustworthy because they lack a realistic perjury sanction. However, courts routinely order the taking of foreign depositions when the witness is unavailable and his testimony is material, as is the case here.").

[35] Defendant agreed at oral argument to a deposition conducted in this manner. Tr. at 21:3-19.

Moreover, the Court has not concluded that lay opinion testimony would be material, and the government may move *in limine* to limit or exclude such testimony on any appropriate ground, including materiality.

SO ORDERED.

Dated: January 15, 2014

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)