UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

   - v. -                              :

                              S14 98 Cr. 1023 (LAK)

SULAIMAN ABU GHAYTH,              :
     a/k/a "Salman Abu Ghayth,"

                       :

          Defendant.

                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## <u>OPPOSITION TO DEFENDANT'S MOTION TO PRECLUDE EXPERT TESTIMONY</u>

        The Government respectfully submits this opposition to defendant Sulaiman Abu

Ghayth's motion to preclude the expert testimony of Evan F. Kohlmann. As described below and

in the attached draft expert report,[1] Kohlmann will help put the Government's evidence in

context in this case. For example, Kohlmann will explain the history and structure of al Qaeda

during the period leading up to and covered by the Indictment. Kohlmann will identify key

leaders and members of al Qaeda during the period covered in the Indictment, many of whom

will be mentioned throughout the trial.

        In addition, Kohlmann will explain how al Qaeda trains its new recruits, through

the use of jihad training camps, so that young, willing men are ready and able to perform terrorist

operations at a moment's notice. The use of such camps is classic al Qaeda tradecraft and

essential to its survival. Kohlmann will further testify to specific terrorist attacks and plots

perpetrated by al Qaeda.

---

[1] An updated draft expert report, recently produced to defense counsel, is attached as Exhibit A.

Finally, Kohlmann will explain al Qaeda's of use of video- and audio-recordings—some of which Kohlmann himself found online and supplied to the Government, and which the Government will offer as evidence at trial—distributed through news agencies or the internet, to recruit willing participants to join al Qaeda or to otherwise engage in jihad by carrying out attacks against the United States.

As discussed below, Kohlmann's methods are reliable, and his testimony is relevant, will be helpful to the jury, and is not unfairly prejudicial. The Court therefore should deny Abu Ghayth's motion.

## A.      Applicable Law

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702, the Court "must determine whether an expert's opinion on the subject will 'assist the trier of fact,' or, in other words, be helpful to the jury." United States v. Kassir, No. S2 04 Cr. 356 (JFK), 2009 WL 910767, at *3 (S.D.N.Y. Apr. 2, 2009) (denying motion to preclude Kohlmann's expert testimony regarding al Qaeda and related topics) (quoting United States v. DiDomenico, 985 F.2d 1159, 1163 (2d Cir. 1993)), aff'd sub nom. United States v. Mustafa, 406 Fed. Appx. 526, 528-29 (2d Cir. 2011). The Court must make a "'common sense inquiry into whether the untrained layman would be qualified to determine intelligently and to

the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.'" Kassir, 2009 WL 910767, at *3 (quoting United States v. Locascio, 6 F.3d 924, 936 (2d Cir. 1993)); see also United States v. Onumonu, 967 F.2d 782, 788 (2d Cir. 1992). The "Rules of Evidence provide a liberal standard for the admissibility of expert testimony," United States v. Dukagjini, 326 F.3d 45, 52 (2d Cir. 2003), as "[e]xpert witnesses are often uniquely qualified in guiding the trier of fact through a complicated morass of obscure terms and concepts." United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994).

The Court must also ensure that expert testimony "rests on a reliable foundation." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993); accord Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999); United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007). To do so, the Court should consider the criteria listed in Rule 702, Kassir, 2009 WL 910767, at *3 (citing Wills v. Amerada Hess Corp., 379 F.3d 32, 48 (2d Cir. 2004)), and may consider other indicia of reliability enumerated in Daubert:

> (1) whether a theory or technique has been or can be tested; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) "the technique's known or potential rate of error" and "the existence and maintenance of standards controlling the technique's operation"; and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community.

Williams, 506 F.3d at 160 (quoting Daubert, 509 U.S. at 593-94). "'The test of reliability is flexible, and Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case.'" Kassir, 2009 WL 910767, at *3 (quoting Kumho Tire Co., 526 U.S. at 141). Courts have "considerable leeway in deciding in a particular case how to go about determining whether particular testimony is reliable." Kumho Tire Co., 526 U.S. at 152. The

object is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Id.

Under these standards, the Second Circuit has repeatedly upheld the admission of Kohlmann's expert testimony regarding al Qaeda and other terrorism topics. United States v. Farhane, 634 F.3d 127, 158-60 (2d Cir. 2011) (upholding Kohlmann's expert testimony regarding "al Qaeda and Azzam Publications, the publisher of a jihadist videotape"); United States v. Mustafa, 406 Fed. Appx. 526, 528-29 (2d Cir. 2011) (affirming Judge Keenan's decision in Kassir to allow Kohlmann to testify as a "terrorism expert" regarding al Qaeda); United States v. Aref, 285 Fed. Appx. 784, 792 (2d Cir. 2008) (upholding Kohlmann's expert testimony regarding Pakistani and Kurdish terrorist groups); United States v. Paracha, 313 Fed. Appx. 347, 351 (2d Cir. 2008) (upholding Kohlmann's expert testimony regarding "the organization and structure of al Qaeda").[2]

## B.     Kohlmann's Testimony Is Reliable

Kohlmann has previously testified as an expert witness in 25 federal criminal trials in the United States.[3] He has testified twice in the military commission trials held in Guantanamo Bay, Cuba. And he has testified in eight different foreign courts and tribunals as an expert witness on terrorism issues. Kohlmann is a civilian who is often retained by various law enforcement agencies around the world because of his expertise on terrorism matters. As set out

---

[2] Other Circuits have also upheld the admission of Kohlmann's expert testimony. See United States v. Hassan, Nos. 12-4067, 12-4063, 12-4061, --- F.3d ----, 2014 WL 406768, at *18-20 (4th Cir. Feb. 4, 2014); United States v. Amawi, 695 F.3d 457, 478-79 (6th Cir. 2012), cert. denied, 133 S. Ct. 1474 (2013).
[3] One court has excluded Kohlmann's testimony in its entirety. United States v. Aldawsari, No. 5:11-CR-015-C (N.D. Tex. Mar. 16, 2012) (order regarding Daubert hearing).

in his curriculum vitae (attached as Exhibit B), he is the founder and senior partner of an
international security consulting firm known as Flashpoint Global Partners.

       Four different Judges in this District alone have qualified Kohlmann as an expert
witness on terrorism-related issues, including the Honorable Sidney H. Stein in United States v.
Paracha, No. 03 CR. 1197 (SHS), 2006 WL 12768 (S.D.N.Y. Jan. 3, 2006), aff'd, 313 Fed.
Appx. 347, 351 (2d Cir. 2008), the Honorable Loretta A. Preska in United States v. Sabir, No. S4
05 Cr. 673 (LAP), 2007 WL 1373184 (S.D.N.Y. May 10, 2007), aff'd sub nom. United States v.
Farhane, 634 F.3d 127, 158-60 (2d Cir. 2011), the Honorable Robert W. Sweet in United States
v. Nayyar, 09 Cr. 1037 (RJS), and the Honorable John F. Keenan in Kassir, above. Each of these
Judges was satisfied that Kohlmann's testimony was sufficiently reliable such that it should be
heard by the jury. Indeed, in Paracha, Judge Stein conducted a day-long Daubert hearing before
concluding that Kohlmann had sufficient education, experience, and training to qualify as an
expert, and that his methodology was sufficiently reliable.[4] Judge Stein found that

> [Kohlmann's] methodology consists of gathering multiple sources
> of information, including original and secondary sources, cross-
> checking and juxtaposing new information against existing
> information and evaluating new information to determine whether
> his conclusions remain consonant with the most reliable
> sources. . . . His methodology is similar to that employed by his
> peers in his field; indeed, he explained that he works
> collaboratively with his peers, gathering additional information and
> seeking out and receiving comments on his own work.

Paracha, 2006 WL 12768, at *20. Judge Stein further found that Kohlmann's expert opinions
"regarding al Qaeda's origins, leaders and certain tradecraft are generally accepted within the

---

[4] A copy of Kohlmann's testimony during the Daubert hearing in Paracha is attached as Exhibit
C. In Sabir, Judge Preska relied on the Daubert hearing held in Paracha in finding that
"Kohlmann is qualified as an expert to provide testimony" on terrorism issues. Sabir, 2007 WL
1373184, at *10. Judge Keenan also relied in part on the Daubert hearing in Paracha. Kassir,
2009 WL 910767, at *2, 7.

relevant community" and that his methodology was "a sufficiently reliable methodology to meet
the requirements of" Rule 702. 2006 WL 12768, at *20.

On appeal, the Second Circuit agreed with Judge Stein's conclusions. In rejecting
the defendant's challenge to the admission of Kohlmann's testimony, the Second Circuit held
that "the court was well within its discretion in ruling that Kohlmann's methodology was
sufficiently reliable and his testimony relevant to the jury's understanding of al Qaeda so as to be
admissible under" Rule 702 and <u>Daubert</u>. <u>Paracha</u>, 313 Fed. Appx. at 351.

Chief Judge Preska also concluded, in <u>Sabir</u>, that Kohlmann was "qualified as an
expert to provide testimony on" al Qaeda's origins, history, structure, leadership, training camps,
instructional methods, and operational logistics, specific acts of terrorism perpetrated by al
Qaeda, and Azzam Publications, a producer of jihadi videos. 2007 WL 1373184, at *2, 10.

The Second Circuit affirmed that ruling, holding that

> Kohlmann's proposed expert testimony had a considerable factual
> basis: (1) his graduate studies at Georgetown University's School
> of Foreign Service and Center for Contemporary Arab Studies and
> at the University of Pennsylvania Law School; (2) his full time
> employment at two organizations focusing on terrorism and al
> Qaeda, "Globalterroralert.com" and the Investigative Project; (3)
> his authorship of various academic papers and a book on al Qaeda;
> (4) his provision of consulting services on terrorism and al Qaeda
> to various federal agencies; and (5) his ongoing efforts to collect,
> analyze, and catalogue written, audio, and visual materials relevant
> to terrorism generally and al Qaeda in particular, including the
> records of guilty pleas and confessions from admitted al Qaeda
> operatives.

<u>Farhane</u>, 634 F.3d at 158-59. The <u>Farhane</u> court also noted Chief Judge Preska's reliance on the
<u>Daubert</u> hearing in <u>Paracha</u>, which established that "Kohlmann's work had undergone various
forms of peer review, that his opinions were generally accepted within the relevant community,
and that his methodology was similar to that employed by experts that have been permitted to

testify in other federal cases involving terrorist organizations." Id. at 159 (internal quotation marks omitted).

Kohlmann's methodology has not changed since he testified in Paracha and Sabir. In Kassir, Judge Keenan cited Judge Stein's findings before concluding, "Kohlmann's expertise and reliability have not diminished, and the standard under Rule 702 and Daubert remains the same. Therefore, his testimony on the origins, history, structure, leadership and various operational methods of al Qaeda and other terrorist groups is sufficiently reliable." 2009 WL 910767, at *7. In fact, Kohlmann has gained more experience and gathered additional information and sources, which could only enhance the reliability of his conclusions.

In light of the Second Circuit's multiple decisions establishing the reliability of Kohlmann's testimony on al Qaeda and related terrorism topics, the Court should deny Abu Ghayth's motion and allow Kohlmann to testify as an expert on al Qaeda.

## C.     Kohlmann's Testimony Is Both Relevant and Helpful to the Jury

Numerous courts, including the Second Circuit, have also held that Kohlmann's testimony is "relevant to the jury's understanding of al Qaeda." Paracha, 313 Fed. Appx. at 351. For example, in Paracha, Judge Stein allowed Kohlmann to testify "regarding al Qaeda's origin, leadership, and operational structure," despite the fact that it was "undoubtedly true . . . that the jurors will already be aware of the existence of an entity known as al Qaeda and that its leader is Usama bin Laden." 2006 WL 12768, at *21-22. Relying on cases involving expert testimony of organized crime families, Judge Stein concluded that "expert testimony about al Qaeda is appropriate despite its regular appearance in the popular media both because the media's depiction may be misleading and because some features of al Qaeda relevant to the allegations in this case remain 'beyond the knowledge of the average citizen.'" Id. at *22 (quoting United

States v. Amuso, 21 F.3d 1251, 1264 (2d Cir. 1994)). The Second Circuit agreed. 313 Fed.

Appx. at 351 (holding that Kohlmann's testimony was "relevant to the jury's understanding of al

Qaeda").

Similarly, in Sabir, Chief Judge Preska concluded that "Kohlmann's proffered

testimony will assist the jury in understanding the evidence." 2007 WL 1373184, at *11. For

example, Kohlmann's "testimony regarding the history, structure, organization, membership, and

operation of al Qaeda will give the jury an important overview of al Qaeda, so that the members

of the jury will have at least a working knowledge of what al Qaeda is," and be able to place

other evidence in context. Id. Affirming, the Second Circuit wrote that Sabir's argument that

Kohlmann's testimony was unhelpful because of jurors' familiarity with al Qaeda and Bin Laden

"requires little discussion." Farhane, 634 F.3d at 159.

> We have approved the use of expert testimony to provide juries
> with background on criminal organizations, notably organized
> crime families. See, e.g., United States v. Matera, 489 F.3d 115,
> 121- 22 (2d Cir. 2007). . . . Despite the prevalence of organized
> crime stories in the news and popular media, these topics remain
> proper subjects for expert testimony. Aside from the probability
> that the depiction of organized crime in movies and television is
> misleading, the fact remains that the operational methods of
> organized crime families are still beyond the knowledge of the
> average citizen. The rationale applies with equal force to terrorist
> organizations, including al Qaeda.

Farhane, 634 F.3d at 159 (internal quotation marks, citation, and alteration omitted) (quoting

Amuso, 21 F.3d at 1264).

Judge Keenan, in Kassir, also concluded that Kohlmann's testimony would help

the jury:

> Although al Qaeda has become a household name, it remains true
> that some depictions of it on television, in the movies, and perhaps
> even in the national news may be misleading. Furthermore, many
> of al Qaeda's operational methods relevant to the charges in this

case may not be known to the layperson. . . . Likewise, Kohlmann's testimony about the use of the internet by al Qaeda to distribute recruiting and training materials would aid the jury in determining whether the websites allegedly operated by Kassir provided material assistance.

Defendant also claims that al Qaeda's leader, bin Laden, is well known to the public, and that the leadership structure below him is irrelevant to this case. This is not so. The Government represents that it will introduce evidence of terrorist propaganda, allegedly seized from Kassir's computer, containing images of al Qaeda leaders whom the jury would not recognize. Expert testimony identifying these individuals and their role in al Qaeda would place this evidence into context and help the jury understand its relevance to the charges.

2009 WL 910767, at *5. Again, the Second Circuit affirmed. Mustafa, 406 Fed. Appx. at 528-29.

Here, Kohlmann's testimony is imperative to a proper jury determination of whether Abu Ghayth conspired to kill U.S. nationals, and provided material support to such a conspiracy. Though the Government need not prove that Abu Ghayth was a member of al Qaeda, the Government's proof will establish that the conspiracy to kill U.S. nationals that Abu Ghayth joined and supported was essentially coextensive with al Qaeda. Therefore, as a threshold matter, the jury must have a working knowledge of what and who al Qaeda is, and how it operates. For example, to sustain its burden on Count One (conspiracy to kill U.S. nationals), the Government must prove, among other things, that two or more individuals agreed to kill U.S. nationals. Kohlmann's testimony regarding al Qaeda's history, its stated mission—including fatwas issued by Bin Laden calling for the murder of Americans—and terrorist operations resulting in the deaths of Americans for which al Qaeda has claimed responsibility, is central to that element of Count One, and without it the jury will be left without the tools to properly evaluate the Government's evidence.

In addition, throughout the trial of this matter, the jury will see evidence and hear testimony about members and associates of al Qaeda. For example, some of the videos the Government intends to offer contain the images of al Qaeda leaders who will not be immediately recognizable to the jury, such as Ayman al-Zawahiri—who was, at the time, Bin Laden's de facto deputy and who is now the leader of al Qaeda—and Mohammed Atef—who was also known as Abu Hafs al-Masri and who was a mastermind of the December 2001 "shoe-bomb" plot. It is unlikely that Atef's position within al Qaeda will be common knowledge amongst the members of the jury, or that his or Zawahiri's images will be immediately recognizable to them. Moreover, many recordings of Abu Ghayth that the Government intends to offer contain references to places or events with which members of the jury likely will be unfamiliar, such as particular al Qaeda facilities in Afghanistan, including specific training camps and an al Qaeda religious institution, and such terrorist attacks as the August 1998 bombings of the U.S. Embassies in East Africa, the October 2000 bombing of USS Cole, the April 2002 bombing of a synagogue in Djerba, Tunisia, and the November 2002 attacks in Mombasa, Kenya. Kohlmann's testimony will explain these people, places, and events so the jury can understand and have context for the statements on the recordings.

Perhaps most importantly, the jury must understand how al Qaeda both recruits terrorists and promotes and encourages terrorist acts against the United States and its citizens around the world. Kohlmann will explain that al Qaeda—typically through its media wing, the As-Sahab Foundation for Islamic Media Publications ("As-Sahab")—creates and disseminates video- and audio-recordings for the purpose of recruiting new members and for encouraging like-minded individuals to commit terrorist attacks around the world. Several such recordings feature Abu Ghayth, and the Government will offer them as evidence at trial. Kohlmann is

uniquely qualified to explain the import and purpose of these videos, explain As-Sahab's

mission, and place the videos in the context of al Qaeda's recruiting and propaganda effort.

Though the Government will not ask Kohlmann to opine on Abu Ghayth's intent, testimony

regarding As-Sahab and the purpose of the videos will give the jury context for understanding

the purpose of Abu Ghayth's appearances and speeches on these videos and audio-recordings.

Put simply, Kohlmann's testimony will advance the truth-seeking process. Many

of the events discussed above, such as the attack on USS Cole, are referred to in various

admissible pieces of evidence, some of which have been largely stipulated into evidence by the

parties. Absent Kohlmann's testimony, the jury will not reliably understand the USS Cole

reference (to take just one example). In the face of that absence of information, either (1) the jury

will throw up its hands at a full understanding of that piece of evidence—a bad result from a

truth-seeking perspective—or (2) the jury as a whole, in its deliberation, might be tempted to rely

on a juror who thinks that he or she remembers the events involving USS Cole and can explain

them to his or her fellow jurors—both a bad result from a truth-seeking perspective and, in any

event, a violation the basic rules of how jurors are supposed to deliberate, by evaluating the

competent evidence, not purporting to supply it. Kohlmann's testimony is therefore necessary to

give the jury the tools and appropriate background to fairly weigh the Government's evidence in

this matter. His testimony should be permitted and the Court should deny Abu Ghayth's motion.

**D.      Kohlmann's Testimony Is Not Unfairly Prejudicial or Cumulative**

As set out above, the evidence in this case is highly relevant for several reasons.

Nevertheless, Abu Ghayth argues that the Court should preclude it pursuant to Federal Rule of

Evidence 403. First, Abu Ghayth argues, in sum, that allowing Kohlmann to testify based on

hearsay is unfairly prejudicial. (Mtn. at 14-15.) Second, he argues that much of Kohlmann's

testimony will be cumulative. (Id. at 15-16.) These arguments are meritless.

As to the first argument, Federal Rule of Evidence 703 explicitly allows an expert

to base "an opinion on facts or data in the case that the expert has been made aware of or

personally observed. If experts in the particular field would reasonably rely on those kinds of

facts or data in forming an opinion on the subject, they need not be admissible for the opinion to

be admitted."

Abu Ghayth relies on Locascio for the proposition that "an expert may not simply act as a

'conduit allowing inadmissible evidence and arguments to flow into the court.'" (Id. at 14

(quoting Locascio, 6 F.3d at 936).) That quotation is the Locascio court's summary of the

appellants' argument, which the Locascio court went on to reject. 6 F.3d at 936-39. In fact,

Locascio held that the government's expert

> was entitled to rely upon hearsay as to such matters as the structure
> and operating rules of organized crime families and the
> identification of specific voices heard on tape in forming his
> opinion, since there is little question that law enforcement agents
> routinely and reasonably rely upon such hearsay in the course of
> their duties.

Id. at 938. The court noted that "[a]n expert who meets the test of Rule 702 . . . is assumed to

have the skill to properly evaluate the hearsay, giving it probative force appropriate to the

circumstances." Id. (internal quotation marks omitted). An expert's reliance "upon inadmissible

evidence is therefore less an issue of admissibility for the court than an issue of credibility for the

jury." Id. (citing United States v. Young, 745 F.2d 733, 761 (2d Cir.1984) (pointing out that the

defendants were free to expose the weaknesses in the prosecution's widespread use of expert

testimony through cross examination)). The bases of Kohlmann's testimony are therefore

appropriate and not a basis for exclusion under Rule 403.

Second, Abu Ghayth argues that allowing Kohlmann to testify about names, places, and other references on al Qaeda brevity, or code, cards would be unnecessary and cumulative, as other Government witnesses will be in a better position to testify about the references on the cards. (Mtn. at 15.) Kohlmann's testimony likely will overlap slightly with that of other witnesses. For example, multiple witnesses will testify about certain al Qaeda leaders, like Bin Laden and Zawahiri, certain places, and certain events. However, Abu Ghayth appears to focus his cumulativeness argument on testimony regarding the brevity card. And that argument is easily addressed: To the extent another witness testifies about a name or reference on a brevity card—such as to whom a name or alias refers—Kohlmann will not be asked to again explain that same reference on the card.

**E.**     **Conclusion**

For all of these reasons, Abu Ghayth's motion should be denied.

Dated: New York, New York
          February 10, 2014

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York

By:     /s/ MICHAEL FERRARA
          JOHN P. CRONAN
          NICHOLAS J. LEWIN
          MICHAEL FERRARA
          Assistant United States Attorneys
          212-637-2779 / -2337 / -2526

## AFFIRMATION OF SERVICE

MICHAEL FERRARA, pursuant to 28 U.S.C. § 1746, hereby declares under the penalty of perjury:

I am an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York. On February 10, 2014, I caused copies of the Opposition to Defendant's Motion to Exclude Expert Testimony to be delivered by ECF and email to Stanley L. Cohen, Esq. (at stanleycohenlaw@verizon.net), Geoffrey S. Stewart, Esq. (at gstewart.defender@gmail.com), Zoe J. Dolan, Esq. (at zdolan@gmail.com), and Ashraf W. Nubani, Esq. (at awn@awnpointlaw.com).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated:  New York, New York
        February 10, 2014

/s/ MICHAEL FERRARA
Assistant United States Attorney