UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
UNITED STATES OF AMERICA

                                                             No. S14 98-CR-1023 (LAK)

**ATTORNEY DECLARATION
in SUPPORT of MOTION for
RULE 15 DEPOSITION**

                        v.

Sulaiman Abu Ghayth,

                                Defendant.
---------------------------------------------------------x

      **STANLEY L. COHEN, Esq.,** an attorney admitted to practice as such before the courts of the State of New York and the Southern District of New York declares under pain and penalty of perjury the following to be true, except that stated upon information and belief, which he believes to be true:

1. The undersigned is attorney of record for Mr. Abu Ghayth and as such is fully familiar with the pleadings and proceedings heretofore had in this matter.

2. This declaration is submitted in support of Mr. Abu Ghayth's motion for a Rule 15 deposition of a Guantanamo Bay detainee, Khalid Shaikh Mohammad.

3. No other written application has been made for the relief sought herein.

4. The sources of the undersigned's information and belief are: the official court record and the pleadings had heretofore; records on file in my office; conversations had with Defendant, with various witnesses to the events complained of herein, and with counsel for the detainee sought for deposition; publicly available research and documents found in the

public domain; the discovery provided by the Government to date, and a declaration of detainee Khalid Shaikh Mohammad.

5. As the Court is well aware, a number of weeks ago, the Defense sought an application Your Honor compelling the Department of Defense (hereinafter, "DoD") to provide access to Khalid Shaikh Mohammad to determine whether Mr. Mohammad possess information that was material and relevant to the facts at bar, and potentially helpful or exculpatory to Abu Ghayth's defense. Before Your Honor decided that motion, the Government and the Defendant entered into an agreement subsequently endorse by the Court, which set up a protocol under which Abu Ghayth was able to submit to Khalid Shaikh Mohammad a series of questions, in order to determine whether to call him as a witness at trial.

6. Subsequently, a list of several hundred questions was provided to Khalid Shaikh Mohammad through his attorney, David Nevin, Esq., and this material was discussed at greater length at the DoD facility at Guantanamo Bay with another member of the Khalid Shaikh Mohammad defense team, Maj. David Poteet.

7. Some weeks ago counsel was informed that Mr. Mohammd was uncomfortable with the proposed format presented to him—namely, a large series of questions and follow-ups, covering a wide space of time and events.

8. Approximately a week ago, Khalid Shaikh Mohammad through his lawyer provided the DoD the detainee's declaration, in response to specific questions proposed to him. That declaration—which constitutes approximately fourteen pages—was provided to the DoD and subsequently to a prosecutor assigned to the civil divisions of the Department of Justice who works in the Southern District of New York. Late Thursday morning, the declaration of Khalid Shaikh Mohammad was provided to counsel, having been fully

screened and cleared, apparently by a range of different national security and intelligence personnel.

9. Based upon discussions with Mr. Nevin and representatives of the government, none of Khalid Shaikh Mohammad's fourteen page declaration was in any way redacted or otherwise classified, and is thus completely within the public domain, to be used by counsel in any way that furthers the defense of Abu Ghayth.

10. That declaration is attached hereto in full, and is submitted in support of the Defendant's application for a deposition of Khalid Shaikh Mohammad.

11. Although at page one, paragraph 4 of Khalid Shaikh Mohammad's declaration, the detainee has indicated that he is hesitant to testify in the ongoing trial of Mr. Abu Ghayth, his reluctance originates in his prior treatment at the hands of the Government— in particular the Department of Defense and the Central Intelligence Agency—over the years of his confinement. Mr. Mohammad indicates his desire to help Mr. Abu Ghayth, but only insofar as the request comes directly from the Defendant, and not from his counsel. Mr. Mohammad indicates in his response that the defense's questions discomfit him, as the questions "correspond precisely with the way the CIA and the FBI posed questions" and that the questions seemed "primarily directed to me." *See* Exhibit B annexed to the Memorandum of Law, at p. 1.

12. While Special Administrative Measures governing Mr. Abu Ghayth's confinement forbid communication with Mr. Mohammad, either directly or through counsel, by this Motion itself Mr. Abu Ghayth publicly indicates his explicit, personal wish to present Mr. Mohammad as witness in his defense. Notably, the defense does not herein seek *to compel* Mr. Mohammad's testimony by means of a subpoena pursuant to Rule 17 of the

Federal Rules of Criminal Procedure or a *writ ad testificantum*, and Mr. Mohammad through his declaration has waived any Fifth Amendment rights he might otherwise have.

13. Based upon discussions with David Nevin, counsel for Mr. Mohammad, it is believed that by the formal filing of the instant application, Mr. Mohammad's misgivings will be thus dispelled, and he will thereafter stand ready, willing and able to appear on behalf of Abu Ghayth with regard to the subject matters set forth in his written declaration.

14. That declaration is clearly relevant, material and helpful to Abu Ghayth.

15. The detainee's written declaration raises particular areas which are expected to be germane to the defense and could be further explored at a Rule 15 depostion. Thus, in relevant part, it is expected that Khalid Shaikh Mohammad if deposed would, among other things, testify that:

- many clerical figures visited Afghanistan at the time of the events at bar, to confirm what they had heard about the Islamic state there, that many moved there with their families, and that not every cleric who spoke at a guesthouse or gathering in the Kandahar area was a member of al Qaeda or even agreed with its ideology;

- imams were accorded great respect by the mujahideen in Afghanistan which afforded them opportunities to speak at any time;

- it was commonplace for visiting scholars at the camps to give religious lectures warning them against radicalization, unlawful killing and "takfir"— the act of declaring someone an infidel, and that such visitors would return back to their countries after their vacations were over;

- the Defendant did not play any military role and did not receive any military training at any time;

- the mujahideen regardless of their ethnic or organizations affiliation had their own activities, whether it be involvement with military, charitable institutes or relief organizations in Afghanistan;

- media activities and military operations were compartmentalized in such a way that individuals involved in media would not have prior knowledge of coming operations, such that a person tasked with making statements would not have foreknowledge of military actions;

- use of radios in Afghanistan was common, owing to the absence of any telephone system or wireless network, and that the so-called "brevity cards" reflect common places and Arab and Afghan persons alike, and that not all the names listed are al Qaeda or Taliban; that the cards were instrumental in keeping contact when U.S. bombing began;

- *bayat* had no ritual or formulaic consistency, and was not even obligatory, in al Qaeda, and that the detainee never saw the Defendant administer *bayat* to others, or speak about it; he would further testify that he never heard of Abu Ghayth giving bayat to Usama bin Laden;

- the detainee never communicated to the Defendant anything about the shoe bomb plot and would not have done so; nor did he ever see him in the company of Richard Reed.

16. As set forth more fully in the attached memorandum of law, there is no debate that Khalid Shaikh Mohammad is unavailable, as that term is well-settled, to testify in a courtroom proceeding in New York City. It is also beyond peradventure that the information of which he is possessed, is helpful to Abu Ghayth's defense, as that term has been recognized by numerous courts. Indeed, having now obtained the benefit of the Government's evidentiary theory of this prosecution, Khalid Shaikh Mohammad's testimony is such that it could raise reasonable doubt as to the charges before the jury.

**WHEREFORE,** the undersigned, upon the foregoing grounds, requests the Court to grant the relief sought herein, to order a Rule 15 deposition of the Guantanamo detainee Khalid Shaikh Mohammad, and for such other and further relief as to the Court may seem just and proper.

Dated: New York, New York
On this 16 March 2014                                    Respectfully Submitted,

_____
STANLEY L. COHEN, ESQ.
Counsel for Sulaiman Abu Ghayth
Stanley L. Cohen & Associates
119 Avenue D, Fifth Floor
New York City, N. Y.   10009
Tel:     (212)979-7572  (212) 995-5574
stanleycohenlaw@verizon.net